Janet P. HALLA, Plaintiff and Appellant,

v.

Donalbain M. HALLA, Defendant and Respondent.

Civ. No. 8831.

Supreme Court of North Dakota.

Aug. 30, 1972.

As Modified Sept. 7, 1972.

Pringle & Harigstad, Minot, for plaintiff and appellant.

Ella Van Berkom, Minot, for defendant and respondent.

STRUTZ, Chief Justice, on reassignment.

The plaintiff commenced this action for divorce on grounds of extreme cruelty and incompatibility of the parties, praying for an equitable division of the property. The defendant filed his answer, denying the allegations of the plaintiff's complaint; alleging that he had, in fact, supported the plaintiff throughout the marriage; alleging that the plaintiff is an able-bodied person capable of contributing to her own support; alleging extreme cruelty on the part of the plaintiff against the defendant; and asserting that the plaintiff's only interest in the defendant was the support and financial aid which she could get from him. The defendant then counterclaimed for a divorce on the ground of extreme cruelty.

The trial court granted a divorce to each of the parties on the ground of irreconcilable differences and awarded the residence in Minot, with whatever household furniture and fixtures were located therein, to the plaintiff, together with $4,000 in cash, the balance due on a $5,000 note which the defendant had given to the plaintiff in 1970, and the sum of $300 for plaintiff's attorney fees and suit costs. The defendant was awarded farmlands which he owned in McHenry and Ward counties.

From the judgment entered, the plaintiff has appealed to this court. In support of her appeal, she has set forth certain specifications of insufficiency of the evidence to sustain the decision of the trial court, and has specified certain errors of law alleged to have been committed by the court in the trial of this action.

The facts as disclosed by the record show that the parties were married at Las Vegas, Nevada, on January 31, 1954. At that time, the plaintiff was forty years of age and had been married five times previously. The defendant was forty-six years old and had not been married previously. No children were born to this union, but the plaintiff had a son and a daughter by two of her previous marriages. The daughter was eight years of age at the time, and for most of the early years of her mother's marriage to the defendant she lived with her mother. The girl was not adopted by the defendant.

A reading of the record also brings to light the fact that this marriage was in difficulty almost from its inception. The parties lived in California for a few months and then, in April of 1954, moved to Minot, North Dakota, where they resided in an apartment in a house owned by the defendant. The defendant was a bit economical in the use of his money. The plaintiff testified that he gave to her twenty-five dollars a week, out of which she was expected to pay for the food and other requirements of the household and also her own clothing. The defendant points out that he paid the taxes, utilities, and repairs for the home, and income tax. The evidence is conflicting on the real cause of difficulty between the parties. The defendant testified that the plaintiff had struck and physically attacked him on several occasions, but this is denied by her. The record does include exhibits which show scratches on the defendant's body, which he asserts were inflicted by the plaintiff. In any event, it is clear that the plaintiff left the defendant in September of 1954 after just seven or eight months of marriage. After visiting a brother in the East, she returned to the State of California.

In January or February of 1955, in an attempt to effect a reconciliation of their differences, the defendant followed his wife to California after renting his farm properties to others. For about two years, until April of 1957, the parties lived in California. During this time, there was constant disagreement and they were separated on a number of occasions. It seems that they couldn't get along with each other and couldn't get along without each other. We learn from the record that even during the time that the parties ostensibly were living together, the defendant repeatedly would leave home and absent himself therefrom for varying periods of time. From April 1957 to July 1958, the parties actually were separated except for occasional visits by the defendant.

From 1964 to 1970, the parties lived separate and apart. The plaintiff testified that during this period she did not know of the defendant's whereabouts. The defendant admits that during this protracted span of time he gave no support at all to the plaintiff to assist her in maintaining herself or to help pay for the medical bills which she incurred in this interval.

Early in 1970, the defendant made a further attempt at reconciliation. Beginning in March of that year, he again began to call on the plaintiff. In August, the parties returned to North Dakota together for the purpose of attempting to re-establish their home. They moved into an upstairs apartment of the home in Minot, which had been damaged by the spring floods of that and the previous year.

When the parties attempted to become reconciled in 1970, they sought to make a settlement of their property rights. The defendant gave to the plaintiff a deed to the home in Minot and a note for $5,000, on which there was an unpaid balance at the time of the trial of this action of $4,500. The plaintiff gave to the defendant quitclaim deeds to the farm properties which the defendant owned at the time of the marriage. On about May 1, 1971, the defendant left the plaintiff for the last time prior to the commencement of this action.

At the time of the marriage in 1954, the plaintiff had no property. She had no education beyond high school and was incapable of earning a living by any means other than as a babysitter or as a seamstress. The defendant, on the other hand, owned three quarters of land, two quarters of which were located near the city of Minot. The value of this land has increased during the years following the marriage, especially that located near Minot.

The granting of the divorce to each of the parties is not in issue on this appeal. Both parties obviously realize that any fur-

ther attempt to continue the marriage relationship would be futile. The plaintiff, however, does question the division of the property and the adequacy of the payment allowed her by the trial court, and the allowance of only $300 for attorney fees.

■ The power of the court to decree a property settlement is derived from statute. Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697 (1947); Harchenko v. Harchenko, 77 N.D. 289, 43 N.W.2d 200 (1950). Our statute which gives to the court the power to decree a distribution of the property of the parties reads as follows:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects." Sec. 14-05-24, N.D.C.C.

■ Thus, when a divorce is granted, the court, in the exercise of its judicial discretion, shall make an equitable distribution of the property. Fleck v. Fleck, 79 N.D. 561, 58 N.W.2d 765 (1953). In determining what is an equitable distribution, facts and circumstances which are relevant and material upon the issues of equitable distribution should be considered. These include the respective ages of the parties, their earning abilities, the conduct of the parties during the marriage, the duration of the marriage, the station in life of the parties, their education, health, and physical condition, and the value and income-producing capacity of the property and whether it was acquired before or during the marriage. Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107 (1952).

■ Thus there is no fixed rule to govern the matter of division of property or the award of alimony, and what is an equitable distribution will depend on the facts and circumstances of each case. Dahl v. Dahl, 97 N.W.2d 844 (N.D.1959); Nicholson v. Nicholson, 126 N.W.2d 904 (N.D. 1964); Rohde v. Rohde, 154 N.W.2d 385 (N.D.1967).

■ Under the statute cited above, the trial court has the duty, when a divorce is granted, to make an equitable distribution of the property. Matters of alimony and equitable division of the property are within the sound discretion of the trial court, and ordinarily the findings of the court will not be disturbed on review in the absence of an abuse of discretion. Fleck v. Fleck, *supra*.

■ The trial court has jurisdiction to make such distribution, regardless of which party is at fault. Agrest v. Agrest, *supra*.

■ While a property settlement made by the parties themselves is not binding on the trial court, because the court derives its power to distribute the property of the parties from statute and not from any agreement of the parties [Harchenko v. Harchenko, *supra*], where the trial court determines that the settlement agreement is equitable and just, in the light of the facts and circumstances in the case, the appellate court will not find an abuse of discretion unless the distribution is untenable, works an injustice, and is not justified by the evidence. Biggs v. Biggs, 397 S.W.2d 337 (Mo.App.1965).

In the light of the facts in this case, we are unable to say that there was an abuse of discretion by the trial court in the division of property. Our rule of civil procedure which is controlling in cases tried to the court without a jury provides that:

". . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportu-

nity of the trial court to judge of the credibility of the witnesses. . . ." Rule 52(a), N.D.R.Civ.P.

■ Considering the entire record, we cannot say that the trial court's findings in the matter of division of property are against the evidence and logic of the facts presented, and that they result in injustice to the plaintiff. The trial court granted to the plaintiff $4,000 in cash over and above the amount which she had voluntarily agreed with the defendant to accept in settlement of their property rights. The court found that both parties were entitled to a divorce, so the plaintiff was not without fault.

For reasons stated in this opinion, we hold that the findings of the trial court relative to the distribution of property are not clearly erroneous, and they therefore are affirmed.

■ The plaintiff raises an issue of the adequacy of the award for attorney fees. The trial court allowed the plaintiff $300 for this purpose. When an action for divorce is pending, the trial court, in its discretion, may require either party to pay any amount necessary to prosecute or defend the action. Sec. 14–05–23, N.D.C.C. In such action, the necessity of suit money usually is ascertained as of the time of the commencement of the action, and not as of the time of the appeal from a judgment, lest the party with few assets be denied representation at the most critical stages of the suit. Allowance of suit money is in the discretion of the trial court, and the court's decision in that regard will not be interfered with unless it is shown that the court has abused its discretion. Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966).

■ In this case, no suit money was awarded to the plaintiff at the time of the commencement of the action, but an award of $300 for attorney fees was made at the conclusion of the case. Although $300 would seem rather inadequate for three days of trial and for time spent in neces-

sary research and preparation for trial, we cannot say that it is so grossly inadequate as to show that the court abused its discretion. The prayer for an increase in the amount of attorney fees allowed by the trial court therefore is denied.

■ The plaintiff has also petitioned this court for an allowance of reasonable costs and attorney fees on appeal. The burden of showing that an allowance of attorney fees is necessary to defend an appeal in a divorce action is upon the party seeking the allowance. Zundel v. Zundel, 146 N.W.2d 903 (N.D.1966). No showing has been made that the plaintiff is in need of money to prosecute the appeal. Therefore, the case is remanded to the district court for determination of what sum, if any, should be awarded to the plaintiff for attorney fees and costs on appeal.

For reasons stated in this opinion, the judgment of the district court is affirmed.

TEIGEN, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.