**Myra WALETZKO, Plaintiff and Appellant,**

v.

**Carol Jo (Vondrachek) HERDEGEN, Defendant and Appellee.**

**Civ. No. 9061.**

Supreme Court of North Dakota.

Feb. 27, 1975.

As Amended March 7, 1975.

Murray, Mack, Moosbrugger & Leonard, Grand Forks, for plaintiff and appellant; argued by Jerome J. Mack, Grand Forks.

Bruce E. Bohlman, Sp. Asst. Atty. Gen., North Dakota Unsatisfied Judgment Fund, and John Schneider, Senior Law Student, Grand Forks, for defendant and appellee; argued by both.

VOGEL, Judge.

This is an appeal from a judgment entered on a jury verdict in district court and from the trial court's order denying Waletzko's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

At approximately 1:20 p. m., February 13, 1972, the plaintiff, Myra Waletzko, was a passenger in a car driven by her husband. While stopped for a red light, the Waletzko car was struck from behind by a car driven by the defendant, Carol Jo Herdegen.

Herdegen saw the Waletzko vehicle ahead of her from a distance of approximately two blocks, at which point she was traveling between 20 and 25 miles per hour. She took her foot off the accelerator, coasted for a few seconds, applied her footbrake, and found that it didn't work. When she discovered that the brake didn't work she was about 110 feet from the Waletzko car. She then swerved to the right, but decided against going over the curb because she was afraid of striking a tree. She began to swerve to the left, but then decided not to because she was afraid of colliding with other traffic. She then continued ahead and struck the Waletzko car. Herdegen did not apply the emergency brake, testifying that she "was too frightened" and "didn't think of anything like that."

At the time of the collision, Herdegen was traveling between 5 and 10 miles per hour. No taillights or headlights were broken on either car. The Waletzko car was pushed ahead a foot or two. As to the nature of the impact, Mr. Waletzko stated in a deposition:

"Well, at the time it really didn't seem that it was a very hard hit because when you are sitting in a car and the car just moves slightly—so like I held on to the steering wheel and having my foot on the brake I didn't really feel much impact but my wife she—she flopped back and forth a couple times."

Mrs. Waletzko was hospitalized for injuries to her back and neck the day after the accident for one week, and for about 2½ weeks in April and May of 1972.

Mrs. Waletzko had been involved in two previous car accidents. On November 4, 1970, she was injured in a rear-end accident, which resulted in hospitalization for approximately three months. On September 12, 1971, she was involved in a side-impact collision and again was hospitalized. In both of the previous accidents, Mrs. Waletzko received injuries to her neck and spine, for which she still was being treated at the time of the accident involved in this appeal.

Prior to the first accident, Mrs. Waletzko worked as a cleaning lady for the public school system and also assisted her husband in the maintenance of several apartment units. There was much testimony at the trial as to what activities she engaged in before the first accident and also as to activities she was and was not able to engage in after each of the three accidents. She went back to work between the first two accidents, but was unable to continue and, at the time of the trial, had not returned to work.

A. E. Culmer, M.D., a witness for the plaintiff, testified that he felt that Mrs. Waletzko had received permanent disability from the second accident and had not recovered from either the first or the second

accident. He did testify, however, that in his opinion Mrs. Waletzko

". . . now has a thirty-five percent partial permanent disability of the cervical spine of which I feel that 15 percent is due to the accident of February the 13th, 1972. I feel that she has also a 25 percent partial permanent disability of the lumbosacral spine or low back, of which I feel that 10 percent is due to the accident of February 13, 1972."

No other medical expert testified.

On January 25, 1974, Dr. Culmer made various rotation and bending tests on Mrs. Waletzko to measure her range of motion. These tests showed, in essence, that her range of spinal motion was more limited than the normal range. X-rays of Mrs. Waletzko's spine also were taken at that time. These X-rays showed continued loss of the normal cervical curve, a decrease in the intervertebral space between two cervical vertebrae, angulation and slight subluxation of some cervical vertebrae, and some spur formations on some of the cervical vertebrae. Views of the low back revealed an increase in the osteophyte formation or spurring on the bodies of the lower dorsal vertebrae, along with a greater decrease in intervertebral space at this level. Dr. Culmer stated that the degenerative changes on these last two groups of X-ray films were felt to be more marked than on the films taken on May 1, 1972.

On cross-examination, Dr. Culmer stated that his examination of Mrs. Waletzko on January 25, 1974, was the first one in which he had recorded measurements of Mrs. Waletzko's range of motion. In earlier examinations, he had noted limitations of motion, but had not recorded the degrees of limitation. He also testified that the osteophytes, or spurs, on Mrs. Waletzko's vertebrae which were noted on X-rays taken February 14, 1972, had developed over a considerable length of time and that a narrowing of intervertebral space between some vertebrae was noticeable on that date. He further stated that most people have a certain amount of osteophytes in their necks or backs, that such a condition ordinarily is more advanced in laboring people than in others, and that a person 40 years old or in his 40s who had been used to doing laboring-type jobs would normally be expected to have a certain amount of such spurring. He also testified that he accepted another physician's opinion that Mrs. Waletzko suffered from a post-traumatic neurosis but that its effect was not included in his disability evaluation.

At the close of the evidence, Waletzko moved for a directed verdict on liability. The motion was denied and the case was submitted to the jury, which returned a verdict in favor of the defendant. Judgment was entered on the verdict, plaintiff's motion for judgment notwithstanding the verdict or in the alternative for a new trial was denied, and plaintiff appealed.

The Waletzko motion for directed verdict was made on the ground that Herdegen did nothing to avoid the accident even though she had sufficient time to avoid it, and there was no fact question since reasonably prudent men could not differ as to her negligence.

■ We held in Nokota Feeds, Inc. v. State Bank of Lakota, 210 N.W.2d 182, Syllabus ¶ 5 (N.D.1973):

"A motion for directed verdict is to be denied unless the evidence is such that reasonable men, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, could not disagree upon the conclusion to be reached."

To the same effect, see Frank v. Daimler-Benz, 226 N.W.2d 143 (N.D.1974).

■ In Rau v. Kirschenman, 208 N.W.2d 1, Syllabus ¶ 3 (N.D.1973), we held:

"A motion for a directed verdict should not be granted unless the moving party is entitled to a judgment on the merits as a matter of law. In determining whether or not the moving party is entitled to a judgment on the merits as a matter of

law, the evidence should be evaluated in the light most favorable to the party against whom the motion was made."

■ Viewing the evidence in the light most favorable to Herdegen, we hold that Waletzko was not entitled to a judgment as a matter of law. The evidence was such that reasonable men could differ as to whether Herdegen was negligent, whether she was faced with an emergency situation not of her own creation, whether she exercised the care that an ordinarily prudent person would have exercised in the same situation, and whether she had sufficient time to consider alternative courses of conduct.

Waletzko contended that Herdegen had not met the burden of showing that she was faced with a sudden emergency or an unavoidable accident. We held in Reuter v. Olson, 79 N.D. 834, 59 N.W.2d 830 (1953), that defendant's testimony of an unaccountable failure of his brakes, which had been in operating order only a few minutes before the collision, raised the issue of unavoidable accident, and the issue was properly submitted to the jury. Herdegen testified that her footbrake didn't function and that it had functioned in at least three complete stops within a few minutes of the accident. This was sufficient under Reuter to raise a fact question for the jury.

■ Waletzko contends that Herdegen's failure to apply the emergency brake was negligence. We have held, however, that:

"If there is a question whether one's conduct has met the standard of the reasonable man, whether one has acted reasonably or with due care, there is a question of fact to be determined by the jury." Johnson v. American Motors Corp., 225 N.W.2d 57, 61 (N.D.1974).

Failure to use one's emergency brake upon failure of the primary brake may be some evidence of negligence, but:

"Questions of negligence and proximate cause are ordinarily for the jury to decide. They become questions of law only when reasonable men can draw but one conclusion therefrom." Mikkelson v. Risovi, 141 N.W.2d 150, Syllabus ¶ 5 (N.D. 1966).

Here, it cannot be said that the issue of Herdegen's negligence was one of law, since reasonable men could differ as to whether her conduct in the situation confronting her was reasonable—whether she acted as an ordinarily prudent person might have acted under the same circumstances.

We therefore hold that the trial court did not err in denying plaintiff's motion for a directed verdict against the defendant on the issue of liability.

The trial court, in submitting the case to the jury, instructed on the sudden emergency doctrine, and instructed that to constitute actionable negligence there must be: (1) a duty or obligation on the part of the one party to protect the other party; (2) a failure to perform that duty; and (3) an injury to the other party resulting proximately from the failure of the party to perform that duty.

■ Prior to instructing the jury, the trial court asked counsel if they had any objections to the instructions. Plaintiff's attorney did not object to any of the instructions and replied in the affirmative when asked by the court if he had had the instructions sufficiently long to study them. Since the instructions were not objected to, they became the law of the case and any objections to them were waived. See Rule 51, N.D.R.Civ.P.; Nokota Feeds, Inc. v. State Bank of Lakota, supra; Lembke v. Unke, 171 N.W.2d 837 (N.D.1969); Montana-Dakota Utilities Co. v. Amann, 81 N.W.2d 628 (N.D.1957).

■ There are cases holding that failure to use an emergency brake is negligence as a matter of law,[1] and that failure of a

---

1. Robinson v. American Home Assurance Co., 183 So.2d 77 (La.Ct. of Appeal 1966); Ritchie v. Davidson, 183 Neb. 94, 158 N.W.2d 275 (1968); Clanahan Construction

braking system is evidence of a violation of a statutory duty to maintain brakes properly and that the defendant has the burden of explaining the brake failure or risk a judgment against him,[2] and that "unavoidable accident" is not a separate defense at all, but only one aspect of the concept of proximate cause.[3] Some of these points are raised in the appellate briefs and arguments, but, so far as the record shows, they were not raised by appropriate motion or objection or request for instruction in the trial court. It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy.

If and when these matters are appropriately raised in an appeal, we will consider the cases so holding as well as those holding to the contrary. In the meantime, we decline to overrule Reuter v. Olson, *supra.*[4]

As to the trial court's denial of Waletzko's motion for judgment notwithstanding the verdict or in the alternative for a new trial, the credibility of the witnesses and the weight to be given their testimony are questions of fact for the jury to determine. In determining the sufficiency of the evidence to sustain the verdict of the jury, we must view the evidence in the light most favorable to the verdict. Johnson v. Auran, 214 N.W.2d 641 (N.D.1974); Watkins Products, Inc. v. Stadel, 214 N.W.2d 368 (N.D.1974); Lembke v. Unke, *supra*; Frank v. Daimler-Benz, *supra.* Our

review of the facts is limited to consideration of whether there is substantial evidence to sustain the verdict; if there is, we are bound by the verdict. Watkins Products, Inc. v. Stadel, *supra*; Lembke v. Unke, *supra.*

Waletzko asserts that the testimony of the physician as to a percentage of disability caused by the third accident is undisputed and must be accepted by the jury and court. The jury need not accept undisputed testimony, even of experts. Burt v. Lake Region Flying Service, Inc., 78 N.D. 928, 54 N.W.2d 339 (1952). It is customary in this State to instruct the juries that they need not accept the opinions of experts, but they should give them such weight as is reasonable in the light of all the circumstances. North Dakota Jury Instructions 1002.

With these considerations in mind, we must sustain the verdict. Under the instructions, the jury could have found that Herdegen was not negligent, or that Waletzko had not proved that she had received any injury or aggravation of a pre-existing injury through any failure of duty on the part of Herdegen, or that damages from the third accident were not proved.

There is substantial evidence in the record to support any of these conclusions, and the verdict will not be disturbed.

Affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and SAND, JJ., concur.

---

Co. v. Mills, 426 S.W.2d 265 (Tex.Civ.App. 1968).

2. Harris v. Irish Truck Lines, Inc., 11 Cal.3d 373, 113 Cal.Rptr. 489, 521 P.2d 481 (1974); Ponce v. Black, 224 Cal.App.2d 159, 36 Cal.Rptr. 419 (1964); Wentworth v. Ford Motor Co., 88 Nev. 535, 501 P.2d 1218 (1972).

3. See, e. g., George v. Guerette, 306 A.2d 138 (Me.1973), which points out that unavoidable accident instructions are disap-

proved by a strong and growing minority of jurisdictions and are particularly inappropriate in jurisdictions which have adopted the doctrine of comparative negligence.

4. We are asked to distinguish Reuter v. Olson on the facts. The author of this opinion, who was attorney on the losing side in that case, believes the two cases are indistinguishable.