Kenneth E. WELKEN, Plaintiff, Appellee and Cross-Appellant,

v.

Wes CONLEY and Clayton Conley, Individually, and doing business as Conley Brothers, a partnership, Defendants, Appellants and Cross-Appellees.

Civ. No. 9272.

Supreme Court of North Dakota.

April 11, 1977.

Vogel, Vogel, Brantner & Kelly, Fargo, and Sproul, Lenaburg & Fitzner, Valley City, for defendants, appellants and cross-appellees; argued by John D. Kelly, Fargo.

John T. Paulson, Valley City, for plaintiff, appellee and cross-appellant.

PEDERSON, Justice.

This is an appeal by Conley Brothers from a judgment entered after a jury trial in Barnes County District Court. After the verdict was rendered for Welken in the amount of $16,040.25, the Conleys moved for judgment notwithstanding the verdict or for a new trial. The trial court denied these motions upon condition that Welken consent to a remittitur of the verdict from

$16,040.25 to $11,040.25, which condition Welken provisionally accepted. The Conleys also appeal from the denial of these motions, and Welken has cross-appealed the remittitur of the verdict by the trial court. The Conleys do not question Welken's right to cross-appeal. We affirm the judgment and the denial of the motions for judgment notwithstanding the verdict and for a new trial, and dismiss the cross-appeal.

In June of 1971, Welker purchased an A4T 1600 Minneapolis Moline tractor from the Conleys and, as part of that transaction, traded in a Model F–Gleaner combine for which he was given a trade-in allowance of $10,737.50. Welken had previously purchased the F–Gleaner combine and a larger Model G–Gleaner combine from the Northern Pacific Railroad for a total price of $9,500.00. Welken immediately experienced difficulty with the clutch system, and the Conleys acknowledge that Welken was not able to use the tractor for his farming operations.

On January 2, 1972, Welken returned the tractor for modifications directed by the factory, which were never accomplished. Ultimately the Conleys accepted the return of the tractor and resold it to another purchaser. The Conleys offered to sell other tractors to Welken and, in December 1973, he signed a purchase order for an 1155 Massey Ferguson tractor. This tractor was found not to be available from the manufacturer, and the parties were unable to complete any other transaction to provide Welken with an acceptable substitute tractor.

When all negotiations failed, Welken brought this action, praying for recovery of his down payment—allegedly $10,737.50, the trade-in value of the Model F–Gleaner combine. In addition, Welken asked for $5,000.00 in damages for failure to deliver another tractor; $5,000.00 for alleged misrepresentation by the Conleys in lying to him and deceiving him as to their intentions; $650.00 for travel and telephone expenses incurred during negotiations; and $1,500.00 for substitute tractor rental fees incurred during negotiations between the parties.

We have recently stated the test to be applied by a court when ruling on a motion for a judgment notwithstanding the verdict in *Lovas v. St. Paul Ins. Companies*, 240 N.W.2d 53, 54–55 (N.D.1976):

> " * * * on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party in whose favor the verdict was rendered, and such motion should not be granted unless the evidence shows that the moving party is entitled to judgment on the merits as a matter of law."

With respect to the motion for a new trial, we held that an order denying a motion for a new trial will not be overturned in the absence of a showing of a manifest abuse of discretion. *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D.1976).

In their motion for judgment notwithstanding the verdict, the Conleys alleged that the evidence was insufficient to sustain the verdict and was against the law because the record disclosed no competent evidence establishing the fair and reasonable market value of the combine traded in by Welken, which, they argued, is the exclusive measure of damages available to plaintiff upon rescission. Their alternative motion for a new trial contained the above allegations and, in addition, alleged error by the trial court in instructing the jury as to the correct measure of damages to be awarded upon rescission of contract, error by the court in failing to give an instruction that the law does not authorize punitive damages in this action, and error by the court in reading the plaintiff's complaint to the jury as part of the instructions.

In its memorandum opinion the trial court stated that the evidence was sufficient to sustain the verdict in favor of Welken, and that the evidence did not entitle the Conleys to a directed verdict for dismissal. The court thus denied their motion for judgment notwithstanding the verdict. The trial court also denied the motion for a new trial conditioned upon Welken's

acceptance of a $5,000.00 reduction in the verdict, and indicated that its reason for remitting the verdict was its error in failing to give Conleys' requested instruction concerning the impropriety of awarding punitive damages in this contract dispute. The court stated that the allegations of lies and deceit in Welken's complaint presented a matter of punitive damages for the jury's consideration, which Welken was not properly entitled to recover, and since it felt reasonably certain that the jury verdict did include $5,000.00 for those improper allegations, it remitted that amount upon Welken's consent.

In this proceeding, the issues on appeal which the parties have presented for our determination, including the cross-appeal, are as follows:

(1) Did the trial court err in submitting to the jury Welken's claims for damages resulting from the Conleys' failure to deliver another tractor?

(2) Did the trial court err in failing to instruct the jury adequately as to how damages are to be determined upon rescission of a contract?

(3) Was the trial court's reduction of the jury verdict a reasonable exercise of its discretion?

## (1) SUBMISSION OF WELKEN'S CLAIMS TO THE JURY FOR FAILURE TO DELIVER ANOTHER TRACTOR.

The Conleys contend that the record provides no evidence of a legally enforceable contract obligating them to sell a substitute tractor to Welken, and therefore damages should not have been recovered against them for their failure to deliver another tractor. The dispute concerning another tractor involves a purchase order for an 1155 Massey Ferguson tractor which Welken signed on December 23, 1973. The Conleys apparently contend that since the purchase order was not signed by them it is unenforceable, as it comes within the Statute of Frauds, § 41–02–08 (2–201), NDCC.

Assuming that this contention is correct, we do not think it precludes Welken from recovering damages on this claim. Welken's injury need not rest upon a legally enforceable contract for the substitute 1155 Massey Ferguson tractor. Such injury may result from the Conleys' nonconforming performance of the first contract for the A4T 1600 Minneapolis Moline tractor, the validity of which is conceded by both parties.

The confusion apparently results from the distinctive interpretations the parties have given to the remedies available upon cancellation of the contract under the Uniform Commercial Code. Using the word "rescission," the Conleys contend that, once the tractor was returned and accepted by them, Welken's only remedy was a return of his down payment.

At oral argument the Conleys argued that rescission and damages are mutually exclusive remedies. This is not the case under the Uniform Commercial Code. *Performance Motors, Incorporated v. Allen*, 280 N.C. 385, 186 S.E.2d 161 (1972); *Lanners v. Whitney*, 247 Or. 223, 428 P.2d 398 (1967). Section 41–02–71 (2–608), NDCC, which permits a buyer to revoke his acceptance of a commercial unit whose nonconformity substantially impairs its value to him, provides that a buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them. The official comments to that section clearly indicate that rescission and damages are not mutually exclusive remedies:

"Although the prior basic policy is continued, the buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available to him. The non-alternative character of the two remedies is stressed by the terms used in the present section. The section no longer speaks of 'rescission,' a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is

instead referred to simply as 'revocation of acceptance' of goods tendered under a contract for sale and involves no suggestion of 'election' of any sort." (Official comment prepared by National Conference of Commissioners on Uniform State Laws and The American Law Institute.)

Section 41–02–99 (2–720), NDCC, similarly provides that expressions of "cancellation" or "rescission" of the contract shall not be construed as a renunciation of any claim in damages for an antecedent breach. The comment to this section states:

"This section is designed to safeguard a person holding a right of action from any unintentional loss of rights by the ill-advised use of such terms as 'cancellation', 'rescission', or the like."

█ Thus, where the buyer has revoked his acceptance, whether the parties used the term "cancellation" or "rescission," the buyer may invoke any of his available remedies under § 41–02–90 (2–711), NDCC, which provides, in relevant part:

"1. Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 41–02–75), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

a. 'cover' and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or

b. recover damages for nondelivery as provided in this chapter (section 41–02–92)."

In addition to recovering so much of the price as has been paid, the buyer may, in a proper case, recover damages for nondelivery under § 41–02–92 (2–713), NDCC, and incidental and consequential damages under § 41–02–94 (2–715), NDCC. *Gawlick v. American Builders Supply, Inc.*, 86 N.M. 77, 519 P.2d 313 (1974); *Davis v. Colonial Mobile Homes*, 28 N.C.App. 13, 220 S.E.2d 802 (1975).

█ Accepting for the moment the correctness of the trial court's remittitur of $5,000.00 of the verdict, we think there is sufficient evidence in the record to justify Welken's recovery of his down payment and incidental and consequential damages in the amount of $11,040.25. While Clayton Conley testified that the value of the Model F–Gleaner combine given as a trade-in by Welken was only $5,400.00, the sales contract for the A4T 1600 Minneapolis Moline tractor indicates that Welken was given a trade-in allowance of $10,737.50 for the combine. While we are aware that trade-in allowances are customarily inflated, the record indicates that the Conleys resold that combine for $10,183.00, which included the payment of $6,136.00 in cash and a $4,047.00 trade-in allowance for the purchaser's combine and two plows. This evidence negates the Conleys' claim that there was "no competent evidence" to sustain the jury's verdict.

█ Additionally, Welken introduced evidence at trial to substantiate his expenditures for travel, telephone calls, and tractor rental fees during this period when Welken was unable to obtain an acceptable substitute tractor after the original Minneapolis Moline tractor proved defective. In view of all of this evidence, we think it was within the province of the jury to admeasure damages, which it did justifiably and upon sufficient evidence. *Skjonsby v. Ness*, 221 N.W.2d 70 (N.D.1974). Where the evidence is in conflict and reasonable men might draw different conclusions, this Court will not disturb the verdict of the jury, the order of the trial court denying a motion for judgment notwithstanding the verdict, or the order of the trial court denying a new trial on the ground of insufficiency of the evidence. *Watkins Products, Inc. v. Stadel*, 214 N.W.2d 368 (N.D.1974).

**(2) THE COURT'S FAILURE TO INSTRUCT THE JURY AS TO DAMAGES UPON RESCISSION OF CONTRACT.**

█ We have determined in this case that sufficient evidence exists in the record

to justify the verdict. We are not overlooking the fact that a verdict which results from wholly erroneous instructions may be so prejudicial as to require that it be set aside.

■ We have repeatedly held that even if an error in the instructions is committed by the court, if the effect of the entire instructions, when read as a whole, is to outline the issues in the case fairly and correctly, the improper instruction will not be considered prejudicial error. See, for example, *Haider v. Finken*, 239 N.W.2d 508 (N.D.1976).

■ It is apparent that the applicable provisions of the Uniform Commercial Code as to cancellation of a contract and damages therefor, as discussed above, were not included in the instructions to the jury. A party cannot complain of an error which he induced and which is in his favor. *Sandberg v. Smith*, 234 N.W.2d 917 (N.D.1975). Welken maintains that the effect of the instructions, as given, was to fairly and correctly outline the issues in the case. While we are inclined to agree with this viewpoint, we think the crucial consideration which renders these instructions acceptable is the failure of the Conleys to object to them at the appropriate opportunity. Rule 51(c), NDRCivP, provides:

"(c) *Exceptions to instructions.* The giving of instructions and the failure to instruct the jurors shall be deemed excepted to unless the court, before instructing the jurors, shall submit to counsel the written instructions which it proposes to give to the jurors and shall ask for exceptions to be noted, and thereupon counsel must designate such parts or omissions of such instructions as he may deem objectionable. Thereafter, only the parts or omissions so designated shall be excepted to by the counsel designating the same. All proceedings connected with the taking of such exceptions shall be in the absence of the jurors and a reasonably sufficient time shall be al-

lowed counsel to take such exceptions and to note the same in the record of the proceedings."

The transcript clearly indicates that, at the outset of the trial, the court gave general, routine instructions without giving counsel an opportunity to object. At the close of the evidence and before giving the instructions relating to the specific law and facts involved in the case, the trial court afforded an opportunity to the attorneys to make objections *in camera*, and no objections were received.

■ In holding that instructions become the law of the case when not objected to, this Court, in *Waletzko v. Herdegen*, 226 N.W.2d 648, 653 (N.D.1975), stated:

"Some of these points are raised in the appellate briefs and arguments, but, so far as the record shows, they were not raised by appropriate motion or objection or request for instruction in the trial court. It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy."

The Conleys argue that Rule 51(c), NDRCivP, is not applicable because the trial court read the first nine pages of the instructions before asking for objections from counsel. While this might appear, on the surface, to be significant, after considering the time those instructions were given and the contents thereof, we find that there was no error in the first nine pages. It is not material that there was no opportunity to object.

The trial court, as the transcript indicates, read the first nine pages of the instructions to the jury at the beginning of the trial before opening statements of counsel were made.[1] Those nine pages were instructions relating to the duties of jurors, the definition of evidence and the distinction between direct and circumstantial evidence, the process of determining credibility

---

1. It is not necessary for this case to approve or disapprove of the practice of giving basic instructions at the commencement of the trial.

and impeachment of witnesses, the effect of rulings of the judge, an explanation of burden of proof and weight of evidence, and similarly related instructions on trial procedure. We do not think these were either prejudicial or objectionable, and the failure of the Conleys to object to them throughout trial, and later in conference with the judge when he specifically requested objections, indicates to us the absence of any such objections. Where the remaining instructions pertaining to the law and facts of the case were presented to counsel for objections before being given to the jury, they became the law of the case when not timely objected to. *Jore v. Saturday Night Club, Inc.,* 227 N.W.2d 889 (N.D.1975).

In *Rau v. Kirschenman,* 208 N.W.2d 1 (N.D.1973), we indicated that Rule 51(c) is not an absolute rule, and should not be applied inflexibly where manifest injustice would be a likely result. While acknowledging that relief from the Rule should be provided for in exceptional circumstances, we carefully limited such relief to those instances where the error in the instruction is so plain, fundamental, and highly prejudicial that our failure to consider the error would result in a miscarriage of justice. See also, *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973).

In view of the fact that we have determined that there was sufficient evidence to justify Welken's recovery of his down payment and incidental and consequential damages in the amount of $11,040.25, we do not think that the trial court's failure to label recoverable incidental and consequential damages as such, in its instructions, constitutes such fundamental error as to justify relief from Rule 51(c).

The Conleys also argue that it was error for the court to read the complaint to the jury as part of its instructions. We have previously discussed that issue in *Reuter v. Olson,* 79 N.D. 834, 59 N.W.2d 830 (1953), where we held that it is bad practice

to do so, but not reversible error unless it appears that a party to the action has been prejudiced thereby. Here, as there, we find no reversible error in view of the fact the court not only read the plaintiff's complaint to the jury, but the defendants' answer and counterclaim as well. The court also instructed the jury that the pleadings were not to be considered as evidence in the case. The only prejudicial effect of reciting the pleadings to the jury in this case involves the possibility that the jury awarded Welken punitive damages when they were not otherwise properly recoverable and, as we indicate below, we think any possible error in this respect was corrected by the trial court in reducing the verdict of the jury.

**(3) THE TRIAL COURT'S REDUCTION OF THE VERDICT AS A REASONABLE EXERCISE OF DISCRETION.[2]**

The trial court stated in a memorandum opinion that the claim for punitive damages was not properly presentable to the jury in this case, and that the inclusion of Welken's claim for $5,000 in damages for lies and deceit resulted in the jury improperly allowing $5,000 therefor. The Conleys argue that the lower court's remittitur was based not only upon its failure to give a proper instruction as to punitive damages, but also upon its failure to instruct the jury on the law of deceit or fraudulent misrepresentation.

We agree with the trial court that there was a reasonable certainty that the error resulted in an improper jury award of $5,000.00, and the court in its discretion properly invoked Rule 59(b)(5), NDRCivP, to correct that error by remittitur in lieu of a new trial. In *Bohn v. Eichhorst,* 181 N.W.2d 771, 778 (N.D.1970), we said:

"Whether excessive damages have been awarded under the influence of passion or prejudice and if so whether the ends of justice may be subserved by ordering a reduction of the verdict, or whether a

---

2. Although Welken has briefed the issue of his right to cross-appeal from a remittitur to which he has consented the Conleys have failed to argue this issue either in their brief or at oral argument, and thus we deem it unnecessary to consider this question here.

new trial must be had, are primarily questions for the trial court."

█ Sufficient evidence exists in the record to indicate that the court's instructions did influence the jury to improperly award punitive damages. We find no error or abuse of discretion on the part of the trial court in remitting the verdict; accordingly, the cross-appeal is dismissed.

For the reasons stated in this opinion, the judgment is affirmed and the order of the trial court denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial is affirmed.

ERICKSTAD, C. J., VOGEL and SAND, JJ., and DOUGLAS B. HEEN, District Judge, concur.

WM. L. PAULSON, J., deeming himself disqualified, did not participate; DOUGLAS B. HEEN, District Judge of the Second Judicial District, sitting.