**Donna Kay MATTIS, Plaintiff and Appellant,**

v.

**Eugene E. MATTIS, Defendant and Appellee.**

**Civ. No. 9480.**

Supreme Court of North Dakota.

Jan. 8, 1979.

Rehearing Denied Feb. 1, 1979.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellant; argued by Gordon W. Schnell, Dickinson.

Jerome L. Jaynes, Hettinger, for defendant and appellee.

SAND, Justice.

Following a marriage of slightly over two years, the parties to this action sought and were granted a divorce in Adams County district court on grounds of irreconcilable differences. Pursuant to the court's order, the judgment made a division of the parties' personal possessions and household items. This division is not challenged on appeal. The issue in this case, however, arises over the distribution of certain other major assets and liabilities of the parties. Appellant contends the trial court made an unequal distribution of those assets and that the evidence is insufficient to support such an unequal distribution. We affirm.

Eugene E. Mattis [Gene] and Donna Kay Mattis [Donna] were married on 22 October 1975. During the course of their marriage they resided in Hettinger, North Dakota, where Gene farmed and worked part-time as a carpenter, and Donna was employed as a county health nurse. Both parties had been married previously and both had children from those previous marriages. No children were born to this marriage and only Donna's youngest daughter resided with the parties on a permanent basis during the period of their marriage.

At the time of the marriage Donna owned, in addition to her personal possessions and household goods, the following assets:

| | |
|---|---|
| Cash | $ 1,000 |
| Stocks and other investments | 65,248 |
| Automobile (the value of this used automobile at the time of the marriage is not available.) | – – – |

At the same time, Gene owned the following assets in addition to his personal possessions and household goods:

| | |
|---|---|
| Cash | $ 1,451 |
| Land | 96,000 |
| Machinery and tools | 15,872 |
| Stored wheat | 15,151 |

In addition, Gene had liabilities in the amount of a $6,000 promissory note.

After the marriage the cash owned by the parties appears to have been placed in a joint checking account and used for living and farming expenses. Both parties contributed their income to the joint account maintained during the marriage, although the exact amount of the contributions as well as the source and amount of expenditures by each party is somewhat in conflict. The record does indicate, however, that Gene worked as a carpenter only part-time and that the farm income during the years of the marriage was below average.

During the marriage, Gene and Donna purchased a house and two lots from Gene's parents. The purchase price of the real property was $20,000 on which a $10,000 down payment was made from the assets held by Donna prior to the marriage. The remaining $10,000 on the contract for deed was still owing at the time of trial. Five thousand dollars worth of assets owned by Donna prior to the marriage were also used, together with her used automobile as a trade-in, to purchase a new automobile for her. Along with the house, lots, automobile, as well as personal and household items, the parties acquired the following assets during the marriage:

| | |
|---|---|
| Machinery | $ 5,112 |
| Stored wheat | 6,105 |

Although during the marriage the parties paid $3,000 on the promissory note made by Gene prior to the marriage; $27,067 of liabilities in the form of promissory notes, conditional sales contracts, and loans were incurred during the same period in addition to the $10,000 due on the contract for deed.

Differences developed between the parties shortly after the marriage which Donna testified were caused to some extent by the gambling and drinking habits of Gene. Following unsuccessful attempts of both parties to mend their differences, Donna filed a divorce complaint on 26 August 1977. After a bench trial held on 1 November 1977, the parties were granted a divorce on grounds of irreconcilable differences. The court on that date took under advisement the division of the parties' property and ordered them to submit lists of the personal and household property owned by each prior to the marriage, as well as a list of the personal and household items acquired during the marriage.

On 18 January 1978, a judgment was entered awarding to each party the personal possessions and household items owned by that party prior to marriage. The court also made a division of items of personal possessions and household goods acquired by the parties during marriage. Those divisions are not challenged on appeal.

Dividing the major assets of the parties, the trial court ordered that Donna receive the stocks and investments she owned prior to marriage which were still held by the parties, as well as the automobile that was purchased with the assets she owned prior to marriage. Donna was to receive from

Gene the $1,000 cash she owned prior to the marriage which was used for living expenses in addition to the $10,000, plus interest, that was paid from Donna's investments for the down payment on the house.

Gene was awarded the farm land, the farm equipment, and the stored wheat, as well as the house and lots. In addition, Gene was to assume the outstanding liabilities including the $10,000 remaining on the contract for deed.

Donna asserts as the issue on appeal that the division of the major assets was inequitable.

We note that Donna was represented by different counsel on appeal than she was at trial. This court has, however, stated in *Rummel v. Rummel*, 265 N.W.2d 230, 232 (N.D.1978):

". . . in the absence of unusual circumstances, new counsel on appeal is limited to the same issues that prior counsel would have been able to raise. Merely becoming a successor to prior counsel does not give him the right to raise issues on appeal which prior counsel could not have raised. The issues and the positions of the respective parties remain the same.

" 'It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy.' *Waletzko v. Herdegen*, 226 N.W.2d 648, 653 (N.D. 1975); *Welken v. Conley*, 252 N.W.2d 311, 317 (N.D.1976)."

To this we add that ordinarily on appeals to this court the record must reflect that the appellant brought all matters necessary for the disposition of the issues raised on appeal before the trial court or that they were improperly excluded by the court; and that all issues raised on appeal were presented to the trial court but were not resolved in accordance with law. The appeal process is designed to review action taken by the trial court. It is not designed to give the appellant an opportunity to develop different strategy or theories. The appellant is bound by the record he made. *Rummel v. Rummel, supra.*

Donna argued the distribution of property was improper. In support of her argument she claimed that the only major items of property acquired by the parties during their marriage were the house and lots in addition to the farm machinery, but the trial court's award in effect restored to each party the property each had prior to the marriage and gave to Gene all the property accumulated during the marriage except for a few items of personal and household goods.

No specific finding of fact was made by the trial court as to the value of the property awarded, the fault of the parties, or the basis for its distribution. Donna contends that because specific findings of fact were not made on these matters this court is not confronted "with the usual situation of reviewing whether or not the findings are 'clearly erroneous' within the purview of Rule 52(a) of the North Dakota Rules of Civil Procedure." Donna then goes on to say there "are no material fact questions here which need to be settled by such findings of fact in order for the Supreme Court to know whether an equitable property division has been made."

We are not persuaded by her reasoning. Our review of fact matters is in accordance with the "clearly erroneous" rule set forth in Rule 52(a), NDRCivP. We have adequate reason to believe that the trial court had reasonable knowledge of the value of the property in the locality at the time it was purchased and drew appropriate inferences from the testimony presented. Any effort on our part to assign a value to the property in question at the time of acquisition and to the contribution each made would be speculative. In a divorce action the trial court's basis for its determination on matters of child support, alimony, and division of property are treated as findings of fact. *Haugeberg v. Haugeberg*, 258 N.W.2d 657 (N.D.1977); *Kostelecky v. Kostelecky*, 251 N.W.2d 400 (N.D.1977); *Larson v. Larson*, 234 N.W.2d 861 (N.D.1975). As we said in *Haugeberg, supra*, at page 659:

"Our scope of review on appeal of these findings is limited by Rule 52(a), N.D.R. Civ.P., and thus we will not set aside those findings unless they are clearly erroneous. A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Kostelecky v. Kostelecky, supra; Rambel v. Rambel*, 248 N.W.2d 856 (N.D.1977); *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973)."

■ Generally, a finding of fact on a controlling issue in a divorce action which fails to show the basis for the trial court's conclusion is held to be clearly erroneous. *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975). We agree the findings of fact in this case could have been drawn in a manner to make clearer the basis for the trial court's distribution of the property. A property division, however, will not be set aside on the grounds of failure to show the basis for it if that basis is discernible by deduction or reasonable inference. *Fine v. Fine*, 248 N.W.2d 838 (N.D.1976).

■ There is no rigid rule for determining the division of property in a divorce proceeding. The ultimate objective is to make an equitable distribution and the determination of what is an equitable distribution lies within the discretion of the trial court and will depend on the facts and circumstances of each case. If our review of the record leaves us with the conviction that a mistake has not been made, the court's findings and distribution will not be deemed clearly erroneous. *Kostelecky v. Kostelecky, supra, Piper v. Piper*, 239 N.W.2d 1 (N.D.1976); *Halla v. Halla*, 200 N.W.2d 271 (N.D.1972).

■ The language of the trial court's conclusions of law and judgment leave little doubt the court, in its division of property, attempted to restore the parties to the status they occupied prior to marriage. Whether or not property was accumulated or acquired before or after marriage is always a proper consideration in making a distribution of property in a divorce action.

*Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966). The distribution of property in an attempt to restore the parties to their relative financial status before marriage will seldom be found clearly erroneous in a situation such as this where the duration of the marriage was short and none of the other guidelines for making a property division as set forth in *Fischer v. Fischer, supra*, are overriding.

Donna agrees that a distribution to the parties of the property they owned prior to marriage was equitable, however, she asserts it was error for the court to award all of the property acquired by the parties during the marriage to Gene in the absence of a finding that one of the factors set forth in *Fischer v. Fischer, supra*, for determining a division of property was strongly in favor of Gene.

■ Donna argued that when none of the factors outlined in *Fischer v. Fischer, supra*, are strongly in favor of either party the only equitable division of property acquired during the marriage is an equal division. The trial court in this case did not make specific findings of the factors enumerated in *Fischer v. Fischer, supra*, however, this court has never said that a court must make an express finding on each of the factors. *Rummel v. Rummel, supra*. When there are no specific findings on the factors for making a division of property and on our review it appears from the record that no factor is overriding in favor of one party or the other, we have justification to conclude not only that the trial court determined none of the factors strongly favored either party, but also that the court's determination is not clearly erroneous.

■ This court, in divorce actions, has stated a number of times that there is no requirement a property division must be equal to be equitable. *Hultberg v. Hultberg*, 259 N.W.2d 41 (N.D.1977); *Haugeberg v. Haugeberg, supra; Grant v. Grant*, 226 N.W.2d 358 (N.D.1975). We believe that principle applies even in the absence of a finding that none of the *Fischer* guidelines strongly favor either party.

We now examine the property division in this case to determine if it was equitably made. In ordering Gene to pay Donna the $1,000 in cash she contributed from her assets held prior to marriage for living expenses in addition to the $10,000 down payment on the house, plus interest, made from Donna's prior-held assets, the trial court placed Donna in substantially the same financial condition she was in prior to marriage of the parties. Donna contended the trial court in awarding the house, lots, and farm machinery acquired during the marriage to Gene, placed him in better financial condition than he was in prior to marriage. The argument overlooks the substantial liabilities incurred by the parties during the marriage that Gene was ordered to assume.

As stated previously, Gene was awarded the house and lots valued at $44,500, farm equipment valued at $5,112, and $6,105 worth of additional stored wheat, plus the property he held prior to marriage. Thus, Gene was given approximately $55,717 worth of property over what he owned prior to marriage. Against this, Gene was required to assume $34,067 worth of liabilities over what he owed prior to marriage, plus he was required to make a payment of $11,000 to Donna. He was also not compensated for the $1,451 of cash he held prior to the marriage which he contributed to the living expenses of the parties. Consequently, the $55,717 worth of property awarded to Gene is decreased by $46,518 for a net gain of $9,199.

Even if we assume, for sake of argument, that awarding Gene $9,199 worth of property more than he owned prior to marriage and replacing Donna to substantially the same financial condition she was in prior to marriage is not equitable, there is another factor involved in this case that supports a determination that the property division was equitable.

Although the trial court made no finding on this point, the evidence shows that prior to Gene's marriage to Donna he lived in the house purchased by the parties from his parents. Gene substantially remodeled the house in the years 1973 through 1975. Gene offered evidence that he invested over $11,000 of materials and over $16,000 of his own labor in remodeling. In fact, it was shown that the $6,000 Gene owed on the promissory note prior to the marriage was part of a $7,500 note Gene made in 1975 to finance the cost of remodeling materials. Although Donna offered testimony that she also assisted in the remodeling project in the form of cleaning, painting, etc., in the absence of more specific evidence such contribution was minute in comparison to that of Gene.

Donna argued the remodeling and the time and money expanded on it are irrelevant property division considerations as the property was acquired by the parties jointly after the improvements were made and there was no evidence offered that the purchase price was reduced by Gene's parents either as a gift to him or in consideration for the remodeling. In fact, there was testimony by Gene that the low purchase price was to benefit the parties equally. Donna contends under landlord-tenant law Gene had no interest in the property as a result of the improvements because had the parties not purchased the property, Gene would have had no cause of action against his parents for the improvements in the absence of a prior agreement that he would be compensated for those improvements.

Assuming Donna's argument to be true, that Gene acquired no interest in the real property because of the remodeling, and his only interest in the property was a joint and equal interest with Donna as a result of the purchase, it does not necessarily follow that Gene's expenditures in remodeling the property are an improper consideration in making a property division in a divorce action. Although the parties may have had a legally equal interest in the property, that does not prevent the court from considering contributions made by a party prior to the marriage that may have enhanced the property's value in determining what is an equitable property division. Equity is the predominant factor in making a property distribution. The basis for the award to Gene of $9,199 worth of property

more than Donna received was supported by the consideration of over $27,000 worth of investments made by Gene in the house prior to the marriage and was not clearly erroneous. Such a consideration is a material matter in determining what is equitable and thus falls within the guidelines established in *Fischer v. Fischer, supra*, to be used in making a property division.

We note that even though the trial court in this case did not make a specific finding of fact that it considered Gene's remodeling investments as a consideration in making the property division, it appears quite obvious that it took those investments into consideration, and counsel for both parties as much as conceded the same.

Although the findings of fact in this case are not as complete as they should be, Donna has stated, and we agree, that the results would not be altered if the trial court were ordered to make additional and more specific findings of fact. We repeat our statement in *Rummel v. Rummel, supra*, at page 237,

> "We do not believe the findings of fact should be made merely to satisfy curiosity. Neither would the ends of justice be promoted in this instance if we were to remand this case to the trial court for additional and more specific findings of fact."

Donna failed to present evidence at trial that the difference between the purchase price and market value of the house and lots was the result of anything other than the remodeling done by Gene. Without any evidence to the contrary, remanding this case for a finding that the increased value of the house was in large part due to Gene's efforts and that the court took this into consideration in making the property division would be a useless ritual.

If Donna believed the trial court's findings were insufficient, she could have moved to alter and amend or reopen the judgment for a clarification of the factual issues determined by the trial court as a basis for its property division. But, instead, she chose to appeal. As we stated earlier herein, an appeal is a privilege designed to review actions taken. Donna has not demonstrated that she was denied an opportunity to make the motions or to present additional evidence. We will not reward the failure to make such motions, or the failure to present evidence contradicting Gene's contribution to the value of the house, with a new trial.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the result reached by the majority and in much of what is said in Justice Sand's opinion, but I would have preferred that we dismiss the appeal on the ground that no justiciable issue has been presented. Where a case is tried to the trial court without a jury, apparently on a theory that the making of an equitable distribution of property in a divorce action is a question of law, and is then appealed and here argued that a determination of what is an equitable distribution is a question of law, it would be useless ritual to reverse and remand and have the case tried again on a theory that equitable property distribution is a question of law.

This case has to be distinguished from *Nastrom v. Nastrom*, 262 N.W.2d 487, 492 (N.D.1978), where we said:

> "The lack of necessary evidence to permit the court to make a correct finding is the responsibility of counsel, not of the court. It cannot be corrected by amended findings. Justice requires that additional evidence on property valuation be received."

We had no suggestion in *Nastrom*, such as appellant has made here, that because there is no finding of fact on property distribution, that part of Rule 52(a), NDRCivP, applicable to appellate review does not apply. Counsel's argument on this question and on other questions may have had some validity under the old appellate practice when trial de novo was available but, even then, the appellate court needed some evidence in the record as to the value of the assets of the marriage if it was to

redetermine what specific division would be equitable.

Most of the bases for my views on the application of Rule 52(a) are set forth in my dissent to *Vetter v. Vetter*, 267 N.W.2d 790 (N.D.1978), and I will not repeat them. Recently I was informed that my views are theoretical and have no relevance to the real world as it exists in the trial courts of this state. Consequently, I feel obligated to remind judges of a suggestion that was made by a Bismarck lawyer to the North Dakota Judicial Council five years ago— that courts ought to require that every lawyer present proposed findings in every non-jury case prior to trial for discussion at a pretrial conference. This apparently is the practice in some New York courts, reportedly with some amazing results. Not only does this serve as an educational process for everyone concerned, it provides a skeleton around which the trial is built and, most significantly, it acts as a trial judge's tool to aid in a prompt and meaningful decision. It discloses to the parties, and to this court if there is an appeal, that the decision is supported by a basis of fact and law. After all, Rule 52(a) is not only an appellate rule but is a rule of practice applicable in the trial court to "all" cases tried without a jury. If Rule 52(a) is to be made to work for the interest of litigants, as it should, the start to improve its working has to take place at the trial court level.