HURLEY PICKETT LAKE FARMS, INC. v. W. F. SULLIVAN
AND ABE JONES

4717                                    434 S.W. 2d 88

Opinion Delivered November 25, 1968

710

*Hodges, Hodges & Hodges* for appellant.

*Hout, Thaxton & Hout* for appellees.

J. FRED JONES, Justice.    In 1965 Abe Jones was the lessee of farm lands from Hurley Pickett Lake Farms, Inc. W. F. Sullivan was a regular employee of Jones, and while destroying a wasp nest outside a building on the leased lands, Sullivan negligently set fire to the building and it was destroyed.    Lake Farms sued Jones and Sullivan in the Jackson County Circuit Court for $18,000 damages.    A jury trial resulted in a judgment for $3,000 in favor of Lake Farms against Sullivan only, and Lake Farms has appealed.    It relies on the following points for reversal:

"The trial court erred in overruling appellant's motion to strike clarification of stipulation.

The trial court erred in overruling appellant's motion for judgment notwithstanding verdict.

The trial court erred in overruling appellant's motion for new trial.

The verdict of the jury awarding only $3,000.00 damages is contrary to the law and evidence and not supported by substantial evidence.

The verdict of the jury whereby they found W. F. Sullivan was not acting within the scope of his employment is not supported by substantial evidence and is contrary to the law and evidence."

The record reveals the following facts:    The appellee Jones had farm lands under lease from the appellant and on the farm was a frame building which had been built about 1960 for the purpose of housing itiner-

ant Mexican farm laborers and which had not been used for some time. The appellee Sullivan was a regular employee of Jones and in July, 1965, Jones instructed his employee Sullivan to clean up some cotton picking machines. Sullivan and a fellow employee moved the cotton picking machines into one end of the frame building for the purpose of working on the machines. After the cotton picking machines were moved into the building on Friday, Sullivan and his fellow employee went about destroying wasp nests inside the building. Sullivan returned to the building alone on the following Monday to work on the machines. After his lunch hour he worked on one of the machines awhile and while taking a break from his work, he noticed a wasp nest on the outside of the building. He threw some tractor fuel on this wasp nest and then lit a cigar and threw the lighted match down. The building caught fire and was destroyed.

This case was tried and verdict rendered for $3,000 on May 15, 1967. Judgment was not rendered immediately by the trial court and on May 24, 1967, appellant filed a motion for judgment notwithstanding the verdict. After the motion was finally disposed of, judgment was entered nunc pro tunc for $3,000 on November 17, 1967.

As a part of the procedure on appellant's motion for judgment notwithstanding the verdict, the attorneys entered into a stipulation on September 15, 1967, as follows:

"That counsel for defendants, Abe Jones and W. F. Sullivan, did not enter any testimony, either by witnesses or by physical evidence, contradicting or disputing the damages sustained by plaintiff.

That no witnesses for the plaintiff or defendants disputed the testimony of Bob Gardner, called as witness for plaintiff in his capacity as Manager of Hurley Pickett Lake Farms, Inc., that the rea-

sonable cost of replacing the building taking into consideration its depreciation was $17,524.87."

On September 19, 1967, the attorney for appellees filed an instrument designated "Clarification of Stipulation" as follows:

"Comes Phillip D. Hout, attorney for Abe Jones and W. F. Sullivan, defendants herein, and in order to clarify the Stipulation of Facts filed herein on September 15, 1967, states:

That the defendants at no time prior to, during, or following the trial of this cause, admitted that the reasonable cost of replacing plaintiff's building was $17,524.87; that this was a disputed matter and an issue of the case for the jury's determination; that although no witnesses were called for the defense for the specific purpose of testifying as to a specific monetary amount of damages less than that to which plaintiff's witness testified, the defense did in fact elicit testimony from Abe Jones, W. F. Sullivan, Bob Gardner and others as to the nature of said building prior to its destruction; that such testimony related to the size of the building, the materials used in the building, the construction of the building, the use of the building, and the general condition of the building prior to its destruction; that all of said testimony was such that the jury could consider in determining the accuracy of the testimony of plaintiff's witness as to the reasonable cost of replacing the building.

The defendants, therefore, withdrew any and all stipulations in conflict herewith."

The appellant filed a motion to strike the clarification. the motion was overruled by the trial court and appellant assigns this as error in its first point.

The stipulation, as well as the clarification, were filed within four days of each other. They were filed some four months after the case was tried and verdict rendered, and some two months prior to entry of judgment. The stipulation, as well as the clarification, had to do with what was and was not in the record pertaining to testimony on damages. The stipulation between the attorneys did not fix the amount of damages at $17,524.87 rather than the $3,000 awarded by the jury, and the clarification filed by appellees' attorney clearly sets out that such was not his understanding and intent. We hold that the court did not err or abuse its discretion in refusing to strike appellees' clarification, and in looking to the record rather than the stipulation in passing on the motion for judgment notwithstanding the verdict.

The appellant's second, third and fourth points are so closely related to the first point, and to each other, that we shall not treat them separately.

The facts in the case here are very similar to those in the case of *Hall* v. *Gage,* 120 Ark. 320, 179 S.W. 508, where the defendant's wall fell on plaintiff's building and damaged it. The plaintiff's son in that case testified that the damage to the building amounted to $1,500. The jury returned a verdict for $500, and on a new trial returned a verdict for $350. The plaintiff filed a motion for judgment for $1,500 notwithstanding the verdict, the motion was denied and judgment rendered on the verdict. In affirming the judgment this court said:

"It is true that no witness testified as to the amount of his damages except his son and that the jury might have found from the testimony of Hall's son that he was damaged in the sum of $1,500, the amount sued for. But we do not think, under the circumstances, that it can be said that his testimony was undisputed. The plaintiff himself did

not testify and it appears from the testimony of his son that the son was interested with his father in the building which was destroyed. Both the questions asked by plaintiff's counsel and the answers made by the son indicate that the son was greatly interested in the building and was, therefore, directly interested in the result of the law suit. Moreover, the witness described the condition of the walls and the kind of building which had been erected by his father and himself. In other words, by the testimony elicited from him on his direct examination and cross-examination the jury were fully informed as to the character and kind of building erected and the probable damage thereto.''

The witness, Bob Gardner, was manager of the appellant corporation, and it cannot be said that he was a disinterested witness. He testified that on the basis of estimates procured from a lumber company, the replacement value of the building, less depreciation, was $17,524.87. He also testified that the building was constructed in 1959 to be used for the housing of Mexican laborers; that it had not been used since 1962, and that he had not attempted to determine the value of its loss of use. This court has held many times that the testimony of a party interested in the suit is not to be considered as undisputed, but the question must be submitted to the jury. *Lynch* v. *East Arkansas Builders' Supply Co.*, 193 Ark. 1004, 104 S.W. 2d 205; ZORUB v. *Missouri P. Rd. Co.*, 182 Ark. 232, 31 S.W. 2d 421; *Lewis* v. *Lewis*, 222 Ark. 743, 262 S.W. 2d 456.

In determining the sufficiency of the evidence to support a judgment, the evidence must be viewed in the most favored light to the appellee; and we must give thereto its greatest probative value in his favor, together with every reasonable inference deducible therefrom. *Vaughan Hardware Co.* v. *McAdoo*, 196 Ark. 471, 118 S.W. 2d 280.

Even though the appellant alleged damages in the amount of $18,000 in this case, the jury verdict for $3,000 was a verdict for a substantial amount, and where a jury returns a verdict for substantial damages on conflicting evidence, a judgment entered thereon will not be disturbed on appeal even though the evidence would have sustained a verdict for a greater amount. *Fulbright* v. *Phipps,* 176 Ark. 356, 3 S.W. 2d 49.

Now as to the appellant's fifth point, the test of the master's liability for the negligence of his servant is not whether the act complained of was committed while the servant was in his employ, but whether it pertains to something incident to the employment and which it was the servant's duty to perform, or was for the master's benefit. *C. J. Horner* v. *Holland,* 207 Ark. 345, 180 S.W. 2d 524; *United Transport, Inc.* v. *Wilson,* 228 Ark. 1058, 312 S.W. 2d 191.

Both the appellant and the appellees have cited two cases close to the border line of the point involved in this case. *Lindley* v. *McKay,* 201 Ark. 675, 146 S.W. 2d 545, supports the appellees' position if the facts are parallel and *Vicennes Steel Corp.* v. *Gibson,* 194 Ark. 59, 106 S.W. 2d 173, supports appellants' position if the facts in the case at bar coincide with the facts of that case. In the McKay case, Lindley operated a fleet of trucks from Memphis through Arkansas into Missouri. Some of the trucks were operated by independent contractors and some were driven by regular employees. Britt Pierce, one of the regular employees, while driving through Arkansas to Missouri, picked up a hitchhiker, Ace Garrett, in Little Rock who requested a ride to Springdale, Arkansas. The truck Pierce was driving met one of the leased trucks being driven by Wilson and the two trucks stopped for the purpose of the hitchhiker, Garrett, interviewing the leased truck driver, Wilson, about employment. The two trucks were stopped about thirty or forty minutes during which time the three occupants of the two trucks ate a watermelon produced by

Wilson, and one of the three cast aside a lighted cigarette which started a fire causing damages which resulted in a suit for damages against Lindley.

The jury found that the Lindley employee, Pierce, started the fire and this was not disturbed on appeal, however, a judgment rendered on a jury verdict against Lindley was reversed by this court in the following language:

"It is, however, earnestly insisted by appellant that even though we should conclude the evidence sufficient to establish that appellant's employee, Britt Pierce, actually started the fire, there can be no recovery for the reason that, at the time of starting the fire, Britt Pierce was not in the performance of the business of his employer, appellant, Lindley, but had stepped aside from his employment.

We think this contention of appellant must be sustained. The undisputed proof in this case discloses that the purpose for which these trucks stopped on the side of the road was to afford Ace Garrett an opportunity to contact Reece Wilson in an effort to secure employment. After stopping for this purpose, Wilson produced a watermelon which the three men proceeded to consume. On the record here, no act was performed during this stop that could be deemed in the furtherance of the master's business or done by appellant's employee, Britt Pierce, while in performance of any duty required of him. The stop was made without appellant's knowledge or consent and solely, we think, for the accommodation of Ace Garrett.

In a case of this kind the test is not whether the negligent act was committed while the servant was in the employ of the master, but whether it was committed at a time when the servant was perform-

ing an act in furtherance of the master's business or in line with the servant's duty."

In the *Gibson* case supra, the appellant, through its employees, was getting out rocks from the land of appellee and a fire was started by one of the employees lighting a cigarette. It was argued that the lighting of the cigarette was not in the prosecution of the master's business, and that the employee had departed from the prosecution of the master's business and was accomplishing his own personal desires, solely for his own personal satisfaction. In affirming the judgment against the employer in the *Gibson* case, this court said:

"The fire having been set out by one of the employees, the question is whether the master was relieved from liability because this act of the employee was not within the scope of his employment."

Then citing from *Rex Oil Corp.* v. *Crank*, 183 Ark. 819, 38 S.W. 2d 1093, the court continued:

" 'It is the law of this jurisdiction, as settled in numerous decisions, that the master is responsible for the negligent act of his servant, if such act occurs during the time the servant is engaged in the service of the master, although the act itself might have been unauthorized; but it is essential to the master's liability that the wrong complained of must have been occasioned by the negligent conduct of the servant who, at the time, was acting within the scope of his employment.'

* * * '. . . as there is no definite rule by which it can be said that the acts of a servant are within or without the scope of his employment, each case of necessity depending upon its own peculiar facts and circumstances.'

* * *

In the instant case, however, although the fire was set out by one of the employee's smoking, there

is no evidence that he, at any time, departed from the business of the master. In this case the master sent his employees onto the land of the appellees to get rock, which he was permitted to do by the appellees. If the master himself had gone on the land of another to get rock and while engaged in getting it set out a fire by smoking or otherwise, he would be liable for the damage caused thereby. He has the right to go on the land to get the rock, but with the obligation that no damage will be done to the landowner in getting rock. Of course, if he would be liable himself for doing the act complained of here, he would be liable if the act was done by an employee whom he had sent there. He takes the right to go on another's land with the obligation that he will remove the rock without committing damages to the landowner.''

So in the case at bar, Sullivan was engaged in working on cotton picking machinery for his employer, Jones. We cannot say, as a matter of law, that he was still engaged in the service of his employer when he went outside appellant's building, threw fuel oil on a wasp nest on the outside of the building, and then lit a cigar.

We conclude, therefore, that there was substantial evidence to support the jury finding that Sullivan was outside the scope of his employment and was not engaged in the service of his employer, Jones, at the time of appellant's damage caused by the negligence of Sullivan, and that the judgment of the trial court should be affirmed.

Affirmed.