WATKINS PRODUCTS, INC., Plaintiff and Appellant,

v.

Richard STADEL et al., Defendants and Respondents.

Civ. No. 8891.

Supreme Court of North Dakota.

Dec. 26, 1973.

Rehearing Denied Jan. 31, 1974.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for plaintiff and appellant.

Rausch & Chapman, Bismarck, for defendants and respondents, Richard Stadel and Martha Stadel.

Gordon O. Hoberg, Napoleon, for defendants and respondents, John Pfaff and Elvina Pfaff.

PAULSON, Judge.

This is an appeal from a judgment of the district court dismissing the plaintiff's complaint and from an order of the district court denying a motion by the plaintiff for judgment notwithstanding the verdict or in the alternative for a new trial.

The plaintiff, Watkins Products, Inc. [hereinafter Watkins], had a contract with

Donald C. Bieber whereby Bieber agreed to sell the Watkins line of products under certain conditions. The contract between Watkins and Bieber was in writing and immediately following, on the same paper, was a surety agreement. On October 31, 1968, Bieber procured the signatures of the defendants, Richard and Martha Stadel and John and Elvina Pfaff [hereinafter defendants], as sureties. The Pfaffs, however, contend that they did not sign the surety agreement.

On December 30, 1968, Watkins accepted the defendants as sureties and sent such acceptance to them by registered mail, together with the material required by §§ 22–01–06.1 through 22–01–06.4, N.D.C.C. This required statutory material includes information for a surety in order that such surety may withdraw from an agreement within ten days from the receipt of the notice of acceptance, and that a surety will receive monthly statements on the status of the account between the principal and the creditor. In the instant case, each of the defendants signed a registry receipt for this material and none of them made any attempt to withdraw from the surety agreement. Subsequently, Bieber's business failed, he filed a bankruptcy petition, and he was adjudicated a bankrupt. Watkins received nothing from Bieber's bankruptcy proceedings and thereafter notified the defendants of the termination of the contract it had with Bieber. The defendants did not pay the $10,601.73 owed to Watkins by Bieber, and Watkins brings this action against the defendants as sureties for the purpose of collecting said sum.

The case was tried to a jury which returned a verdict in favor of the defendants and against Watkins. In accordance with that verdict, the district court rendered its judgment and, thereafter, denied Watkins' motion for judgment notwithstanding the verdict or in the alternative for a new trial.

Watkins appeals from the judgment and the order denying judgment notwithstanding the verdict or in the alternative for a new trial and charges error on the part of the district court in receiving into evidence over Watkins' objection on hearsay grounds, conversations which occurred between Bieber and the defendants at the time the surety agreement was signed by the defendants; and in denying its motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The statements condemned as hearsay by Watkins were made by Bieber to the defendants at the time he induced them to sign as sureties. It is claimed by the defendant, Richard Stadel, that the statements were fraudulent and calculated to induce him and his wife to sign the agreement as sureties. Richard Stadel testified that Bieber said to him:

". . . if I signed it I could get that money back that I got credit coming."

This statement is alleged to be fraudulent because Bieber never told the defendants, Stadel and his wife, that they would be liable for his, Bieber's, debts and because the signing of the surety agreement had no relation to the Stadels' getting a refund for undelivered merchandise bought and paid for by the Stadels.

We believe the alleged fraudulent statement was hearsay; however, we also believe the statement to be admissible under the res gestae exception to the hearsay rule. In 37 Am.Jur.2d, Fraud and Deceit § 455, at page 628, we find this language:

"Declarations made by the parties to a transaction, or an agent of one of the parties, at the time thereof, which are relevant on the issue of fraud in the transaction, are generally viewed as admissible as part of the res gestae."

Further, in 2 Jones on Evidence (6th Ed.) § 8:7, at page 175, it is stated:

"Accordingly, where the issue is as to the existence of fraud, the natural and unpremeditated declarations of the parties during the negotiations are held to be admissible . . .

"To be admissible as res gestae the statement which is offered in evidence must be a part of the litigated transaction, occurrence or condition and must tend to describe, illustrate or explain it."

In the instant case, the statement made by Bieber to the Stadels at the time they signed the surety agreement was a part of the transaction in litigation and tends to illustrate it. As a result it is admissible evidence.

On the question of the propriety of the district court's denying Watkins' motion for judgment notwithstanding the verdict or in the alternative for a new trial, we first refer to Watkins' motion for a directed verdict made at the close of all the evidence at trial, which motion was based on the following grounds:

"1. That the record shows without dispute that Donald Bieber was indebted to Watkins Products, Inc. in the sum prayed for in the complaint in excess of $10,000.

"2. That the defendants either executed —and in the case of the Stadels without controversy—executed the suretyship agreement dated October 31, 1968.

"3. That they were notified of its acceptance by Watkins Products, Inc.

"4. That the plaintiff complied with the statutes of the State of North Dakota in furnishing monthly statements of account.

"5. That none of the defendants ever notified Watkins Products of their withdrawal or desire to cancel the surety agreement.

"6. That even in the event that the 1968 agreement was not executed by the Pfaffs they are estopped from denying that they are bound by it as a matter of law and, therefore, there is no issue for the jury and it resolves itself into a matter of law."

In Farmers Union Grain Terminal Ass'n v. Briese, 192 N.W.2d 170 (N.D. 1971), we held in paragraphs 2 and 3 of the syllabus:

"2. On an appeal from an order denying a motion for judgment notwithstanding the verdict, the only grounds which will be considered are those which were assigned on the motion for a directed verdict.

"3. On review of an order denying a motion for judgment notwithstanding the verdict the Supreme Court is limited to a consideration of the evidence, and if the record is such that there is some issue of fact for the jury and it rendered a verdict thereon, the order will be affirmed."

The above grounds for Watkins' motion for a directed verdict ignore the fact that there were issues to be decided by the jury on the questions of whether the Pfaffs signed the surety agreement and whether Bieber defrauded the defendants, the Stadels, into signing the surety agreement. By authority of the *Briese* case, *supra,* we believe there were issues of fact to be decided by the jury and therefore the motion by Watkins for a judgment notwithstanding the verdict was properly denied by the district court.

In Ternes v. Farmers Union Central Exchange, 144 N.W.2d 386, 390 (N.D.1966), we set out several well-established principles on the subject of this court's review of a jury's verdict. The pertinent principles are:

"1. Our review of the facts is limited to a consideration of whether there is substantial evidence to sustain the verdict; if there is such evidence, we are bound by the verdict. Porter v. Hendricks, N.D., 110 N.W.2d 417; Seaborn v. Kaiser, N.D., 117 N.W.2d 863.

"2. Where the evidence is in conflict and reasonable men might draw different conclusions therefrom, this court on appeal will disturb neither the verdict of the jury based upon such evidence, nor

the order of the trial court denying a motion for judgment notwithstanding the verdict or for a new trial on the ground of insufficiency of evidence. Killmer v. Duchscherer, N.D., 72 N.W.2d 650.

. . . . . .

"4. In reviewing the sufficiency of the evidence on appeal from the judgment and from an order denying a motion for judgment notwithstanding the verdict or for a new trial, this court will view the evidence in the light most favorable to the verdict. Vaux v. Hamilton, N.D., 103 N.W.2d 291.

"5. A motion for judgment notwithstanding the verdict admits not only the truth of the evidence given by the party against whom the verdict is asked to be directed, but also such inferences and conclusions which can reasonably be deduced from such evidence. Vick v. Fanning, N.D., 129 N.W.2d 268."

■ In Brauer v. James J. Igoe & Sons Construction, Inc., 186 N.W.2d 459 (N.D. 1971), we held, in paragraph 8 of the syllabus:

"On appeal from an order denying a motion for a new trial on the ground that the evidence is insufficient to support the verdict, the Supreme Court's review is limited to a consideration of whether there is substantial evidence to sustain the verdict. If there is such evidence, the Court is bound by the verdict."

In the instant case, the jury had to determine whether the defendants were liable, as sureties of Bieber's indebtedness, to Watkins for $10,601.73. In making that determination the jury had to consider the questions of whether or not the Pfaffs signed the surety agreement and whether Bieber fraudulently induced the defendants, the Stadels, into signing the surety agreement, thereby invalidating said agreement.

The jury had evidence in the form of testimony by the Pfaffs that they had not signed the surety agreement. Watkins did not directly refute this testimony but argued on the basis of presumption that the Pfaffs had signed, since the Pfaffs had each signed a registry receipt for the mail that informed the Pfaffs of Watkins' acceptance of the surety agreement. This left a question of fact for the jury's determination.

■ On the basis of the cases of Ternes v. Farmers Union Central Exchange, 144 N.W.2d 386 (N.D.1966), and Brauer v. James J. Igoe & Sons Construction, Inc., 186 N.W.2d 459 (N.D.1971), viewing the evidence in the light most favorable to the verdict, we believe that there is substantial evidence to support the verdict rendered in this case and we are therefore bound by it. With the evidence in conflict and open to different conclusions by reasonable men, this court will disturb neither the verdict of the jury based upon that evidence nor the order of the trial court denying a motion for judgment notwithstanding the verdict or in the alternative for a new trial.

■ In 37 Am.Jur.2d, Fraud and Deceit § 19, page 43, it is stated:

"The existence of fraud is ordinarily a question of fact. Whether a fraud has been committed ordinarily requires the determination of questions of fact by the jury under instructions from the trial court, if the case is one tried by a jury . . . ."

In the case at bar, the jury considered the previously quoted statement made by Bieber to the defendants, the Stadels, at the time he induced them to sign as sureties, and the jury made its decision as to whether that statement, taken in light of the surrounding circumstances, constituted fraud in inducing the Stadels to sign the surety agreement.

■ The verdict in this case was in the form of a single determination by the jury that Watkins should take nothing by its action and that its complaint should be dis-

missed. As a result we have no specific findings to review on each of the issues. We therefore indulge in the presumption that since the jury returned a verdict for the defendants, it determined all questions of fact within its province in favor of the defendants, including the fact that the Pfaffs did not sign the surety agreement. See Leonard v. North Dakota Co-op. Wool Market. Ass'n, 72 N.D. 310, 6 N.W.2d 576, 579 (1942).

A question may arise as to the propriety of the jury's finding on the fraud practiced by Bieber and its imputation to Watkins so as to invalidate the surety agreement. As will be seen, it was Watkins' acts or failures to act that caused the invalidation of the surety agreement and it was therefore within the province of the jury to find fraud on the part of Watkins as well as on the part of Bieber.

In Hartford Accident and Indemnity Co. v. Anderson, 155 N.W.2d 728 (N.D.1968), Mrs. Anderson signed an indemnity agreement as surety for her husband, with the Hartford Company as the obligee. Mrs. Anderson's husband told her that the indemnity agreement was needed in order that he might bid on a construction job. Mrs. Anderson signed the indemnity agreement without reading it and, as it turned out, the agreement actually covered bonds that had been issued to Mr. Anderson in the past as well as in the future. When Mrs. Anderson was proceeded against by the Hartford Company, she set up fraud on the part of her husband in an attempt to void the indemnity agreement. We held in Hartford, supra, at paragraph 4 of the syllabus, that:

"When a principal obligor has induced his surety or guarantor to sign an instrument by false or fraudulent representations, such misrepresentations may not be set up by the surety or guarantor as a defense to an action on the endorsement or guaranty unless the obligee or guarantee has notice of or has participated in the fraud."

In the Hartford case, there was no evidence that the Hartford Company had notice of or had participated in the fraud practiced by Mr. Anderson. In the case at bar, there is no evidence that Watkins had notice of or participated in the fraud practiced by Bieber. That is, Watkins did not know that Bieber was going to tell the Stadels that if they signed the surety agreement they would get some money returned. On the other hand, Watkins did possess knowledge about Bieber that would have affected the Stadels' desire to sign the surety agreement, had they, too, possessed such knowledge. The knowledge possessed by Watkins with respect to Bieber concerned Bieber's financial condition at the time he induced the Stadels to sign the surety agreement.

It was testified to by Mr. Frank Kinzie, Jr., manager of Watkins' collection department, on cross-examination, that at the time Watkins sent the Stadels notice of acceptance of the surety agreement, Watkins knew that Bieber had written nine bad checks to Watkins in payment for goods received. Despite that knowledge, Watkins sent its usual letter of acceptance to the Stadels, which letter proclaimed that Watkins dealers were dependable businessmen; and Watkins made no mention to the Stadels that Bieber had been issuing bad checks.

In Sumitomo Bank of California v. Iwasaki, 70 Cal.2d 81, 73 Cal.Rptr. 564, 447 P.2d 956, 962 (1968), the general rule in California with respect to the obligee (creditor) in a surety agreement was stated to be that:

" 'if [the creditor] knows, or has good grounds for believing, that the surety is being deceived or misled, or that he was induced to enter into the contract in ignorance of facts materially increasing the risks, of which he has knowledge, and he has an opportunity, before accepting his undertaking, to inform him of such facts, good faith and fair dealing demand that [the · creditor] should

make such disclosure to [the surety]; and if [the creditor] accepts the contract without doing so, the surety may afterwards avoid it.'" [Citations omitted.]

We believe the rule stated in the *Iwasaki* case to be equitable and therefore adopt it as an addition to our rule stated in Hartford Accident and Indemnity Co. v. Anderson, 155 N.W.2d 728 (N.D.1968).

 In *Hartford* there was no evidence that the Hartford Company possessed knowledge that increased the risk to Mrs. Anderson beyond that risk which she intended to assume. It was reasonable for the Hartford Company to assume that Mr. Anderson would tell Mrs. Anderson the purpose for the indemnity agreement there involved. In the instant case, however, Watkins cannot assume that Bieber would tell the Stadels that his financial condition was so poor that he was passing bad checks. Bieber wanted to stay in business and, to do so, he needed sureties; he was not likely to tell prospective sureties of his writing bad checks. It therefore became the duty of Watkins to inform the Stadels about Bieber's issuance of nine bad checks and, had the Stadels then been so notified, it is reasonable to assume that the Stadels then would have exercised their option to rescind, pursuant to the provisions of § 22–01–06.2, N.D.C.C.; and, further, under the instructions given to the jury, it is reasonable to assume the jury so concluded.

The judgment and order denying motion for judgment notwithstanding the verdict or in the alternative for a new trial are, accordingly, affirmed.

ERICKSTAD, C. J., and VOGEL, KNUDSON and TEIGEN, JJ., concur.