637 P.2d 1065

**FIRST NATIONAL BANK OF ARIZONA, a national banking association, Plaintiff-Appellee,**

v.

**BENNETT VENTURE, LTD., a British Columbia, Canada corporation, Defendant-Appellant.**

**No. 1 CA–CIV 4874.**

Court of Appeals of Arizona, Division 1.

Sept. 3, 1981.

Rehearing Denied Oct. 28, 1981.

Review Denied Nov. 24, 1981.

Streich, Lang, Weeks & Cardon by Wm. S. Hawgood, II, Earl E. Weeks, Phoenix, for plaintiff-appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Redfield T. Baum, Phoenix, for defendant-appellant.

OPINION

OGG, Judge.

In this appeal we must determine if the trial court properly granted summary judgment to the appellee, First National Bank of Arizona (Bank) against the appellant, Bennett Ventures, Ltd. (Bennett) for the payment of an indebtedness in accordance with Bennett's continuing guaranty agreement with the Bank.

The Bank filed an action to recover on the continuing guaranty executed by Bennett, dated August 6, 1976, guaranteeing payment of any and all indebtedness of Tupper Tree Farms, Inc. The continuing guaranty agreement expressly provided that, in the event of a default by Tupper Tree Farms, Inc., the Bank could proceed against Bennett, whether or not it also proceeded against the borrower or against any other co-guarantor. Tupper Tree Farms, Inc. subsequently filed a petition in bankruptcy on May 1, 1978.

Bennett admits signing the continuing guaranty and further concedes that Tupper Tree Farms, Inc. was in default. However, Bennett argues that the court erred in granting the Bank summary judgment because there were questions of material fact relative to the Bank's duty to disclose knowledge it possessed of Lloyd Tupper and Tupper Tree Farms, Inc.'s unstable financial condition before accepting Bennett's guaranty. Further, Bennett argues that, even assuming the Bank is entitled to summary judgment on that issue, such judgment cannot be entered until the Bank has established its rights in the collateral security for the loan in question.

## DID MATERIAL FACTS EXIST WHICH PRECLUDED THE ENTRY OF SUMMARY JUDGMENT?

The pertinent facts disclose that the Bank made its initial loan to Tupper Tree Farms, Inc. in December of 1973, in the amount of $20,000. This loan and all subsequent loans to Tupper Tree Farms, Inc. were guaranteed by Back Bay Investment Fund, the parent corporation of Tupper Tree Farms, Inc. and Lloyd Tupper. Lloyd Tupper was an officer and minority stockholder in Tupper Tree Farms, Inc. There is nothing in the record to indicate that Lloyd Tupper had any obligation to lend money or to provide additional capital to Tupper Tree Farms, Inc. By March 1975, the Bank had made loans totaling approximately $70,000 to Tupper Tree Farms, Inc.

In 1975, Bennett became the majority stockholder in Tupper Tree Farms, Inc. During the entire time frame in which Bennett executed the continuing guarantees to the Bank, which form the subject matter of this appeal, Bennett was the majority stockholder of Tupper Tree Farms, Inc. At this time, Tupper Tree Farms, Inc. owed in excess of one million dollars to Bennett for past loans. These substantial loans were made prior to any meetings between the representatives of the Bank and Bennett relative to the continuing guaranty agreements.

Starting in the summer of 1975, and continuing through the end of the year, Bennett had several meetings with the Bank, and in December 1975, Bennett signed the first continuing guaranty. In April and August 1976, Bennett delivered new continuing guarantees to the Bank, and by late 1976, Tupper Tree Farms, Inc.'s total outstanding indebtedness to the Bank was approximately $400,000.00.

When Tupper Tree Farms, Inc. subsequently defaulted on its loan obligations to the Bank, the Bank then made demand upon Bennett for payment in accordance with the continuing guaranty agreement. This suit followed when Bennett refused to comply with its continuing guaranty agreement.

Bennett argues it should be released from the continuing guaranty agreement because the Bank withheld facts which materially increased Bennett's risk under the surety agreement. Bennett claims the Bank knew and failed to inform Bennett's representatives that the co-guarantors were in a poor financial condition and that Lloyd Tupper was not reliable. Two of Bennett's officers state in their affidavits that Bennett would not have signed the guaranty agreement if they had known that Lloyd Tupper had no assets and was not considered reliable by the Bank. Bennett relies on the provisions of Section 124(1) of the *Restatement of the Law of Security.* Where we have no pertinent Arizona decisions, the Arizona courts will follow the *Restatement of the Law* whenever applicable. *See Bristor v. Cheatham,* 75 Ariz. 227, 255 P.2d 173 (1953); *Serrano v. Kenneth A. Ethridge Contracting Co.,* 2 Ariz.App. 473, 409 P.2d 757 (1966). Section 124(1) of the *Restatement of the Law of Security* states:

(1) Where before the surety had undertaken his obligation the creditor knows facts unknown to the surety that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume, and the creditor also has reason to believe that these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, failure of the creditor to notify the surety of such facts is a defense to the surety.

Under this section, Bennett could be released from the guaranty agreement where (1) the Bank has knowledge of facts unknown to Bennett that materially increase the risk beyond that which the Bank has reason to believe Bennett intended to assume; (2) the Bank has reason to believe these facts are unknown to Bennett; and (3) the Bank has a reasonable opportunity to communicate such facts to Bennett.

■ Viewing the facts in a light most favorable to Bennett, we find that the affidavits submitted by Bennett in opposition to the motion for summary judgment are insufficient to establish a valid defense which would release Bennett from the obligations of the continuing guaranty agreement. We find Bennett's attempt to obtain a release from its agreement fails in two respects under the guidelines of the *Restatement.* First, the Bank did not have knowledge of facts unknown to Bennett that materially increased Bennett's risk beyond which the Bank had reason to believe Bennett intended to assume. Second, the Bank did not have reason to believe these facts were unknown to Bennett. *See Marine Midland Bank v. Smith,* 482 F.Supp. 1279 (S.D.N.Y.1979), aff., 636 F.2d 1202 (1980). There is no allegation that the Bank withheld any information regarding its customer, Tupper Tree Farms, Inc., whose loans Bennett was guaranteeing. Lloyd Tupper and Back Bay Investment Fund, the co-guarantors, were not the Bank's debtors, and Bennett was not guaranteeing a loan to Lloyd Tupper or Back Bay Investment Fund, the parent corporation of Tupper Tree Farms, Inc. The Bennett affidavits in opposition to the summary judgment do not say the Bank made any representations relative to Lloyd Tupper or Back Bay Investment Fund. The affidavits merely state that at no time did the Bank representatives state anything of a derogatory nature about Lloyd Tupper's honesty or financial condition.

The record shows that representatives of Bennett in an attempt to save the sagging financial condition of Tupper Tree Farms, Inc., in which Bennett held the majority stock interest, went to the Bank to persuade the Bank to lend additional funds. In the quest for funds, Bennett's representatives recited favorable impressions of Lloyd Tupper, who was operating Tupper Tree Farms. The fact that the Bank representatives did not argue or state the Bank's reservations as to Lloyd Tupper's reliability or financial condition cannot now be used to free Bennett under the guaranty agreement. Lloyd Tupper was in business with Bennett and Bennett, as the majority stockholder and major creditor of Tupper Tree Farms, Inc., was in a better position to know Lloyd Tupper and his financial condition than the Bank. It appears that the very purpose of getting Bennett to guarantee any further loans to Tupper Tree Farms was because the Bank was concerned with Lloyd Tupper and his management of Tupper Tree Farms.

Both parties cite and rely upon the case of *Sumitomo Bank of California v. Iwasaki,* 70 Cal.2d 81, 73 Cal.Rptr. 564, 447 P.2d 956 (1968). Our reading of *Sumitomo* supports our disposition of this case. In *Sumitomo,* the guarantor sought to avoid liability under a continuing guaranty agreement on the grounds that the bank had failed to disclose certain material information to the guarantor. The undisclosed information was that the debtor had borrowed a portion of the loan funds from the bank for the purpose of paying federal taxes. The guarantor argued that he should be released from his liability because the bank had failed to inform him of the borrower's financial difficulty, reasoning that he would have terminated his obligations as a guarantor if he had received such information. The California Supreme Court disagreed and held that the guarantor was not enti-

tled to be discharged from his obligation under the guidelines of Section 124, *Restatement of Security*. In *Sumitomo*, the court made an observation that is especially pertinent to the facts before us. The court stated:

> Particularly in those cases in which the surety assumes the risk at the debtor's request, rather than the creditor's, the creditor may reasonably assume that the surety will acquire from the debtor himself all information which it reasonably believes to be relevant to the risk.

73 Cal.Rptr. at 569, 447 P.2d at 961.

In the present case, the Bank did not seek out Bennett as a guarantor on the Tupper Tree Farms, Inc. loan. Rather, Bennett came to the Bank to determine the basis upon which the Bank would consent to lend additional funds to the financially troubled Tupper Tree Farms, Inc. Under the facts of this case, we find no legal basis to release Bennett from the obligations of the guaranty agreement and find no error in the trial court granting the Bank's motion for summary judgment.

In a supplemental list of authority, Bennett cites *Chemical Bank v. Layne*, 423 F.Supp. 869 (S.D.N.Y.1976), and *First National Bank and Trust Company of Racine v. Notte*, 97 Wis.2d 207, 293 N.W.2d 530 (1980). We have considered these cases and distinguish them from this case on the facts.

## DUTY OF THE BANK TO ESTABLISH ITS RIGHTS IN THE COLLATERAL SECURITY ISSUE

■ Bennett also argues that the Bank was not entitled to summary judgment because it had not yet established its rights in the collateral for the loan. Bennett relies upon A.R.S. § 44–2573, which provides as follows:

*Impairment of recourse or of collateral*

A. The holder discharges *any party to the instrument* to the extent that *without such party's consent* the holder:

1. *Without express reservation of rights* releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

2. Unjustifiably *impairs any collateral* for the instrument given by or on behalf of the party or any person against whom he has a right of recourse. (emphasis added)

The foregoing statutory language clearly provides that the provisions of A.R.S. § 44–2573 are subject to the terms of the express agreement between the parties. By the express terms of the continuing guaranty agreement, Bennett waived any right it had to require the Bank to look to other collateral prior to seeking enforcement of the continuing guaranty against Bennett.[1] The continuing guaranty provides as follows:

> (4) Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to ... (b) take and hold security for the payment of this guaranty or the indebtedness guaranteed, and exchange, enforce, waive and release any such security;

> \*    \*    \*    \*    \*    \*

> (5) Guarantors waive any right to require Bank to ... (b) *proceed against or exhaust any security held from Borrower* .... (emphasis added)

Under the specific terms of the continuing guaranty agreement, Bennett authorized the Bank to proceed against the collater-

---

1. By this decision we do not rule out the possibility that the doctrine of equitable subrogation could be applied in the appropriate fact situation. *See D. W. Jaquays & Co. v. First Security Bank*, 101 Ariz. 301, 419 P.2d 85 (1966). This doctrine was not argued or developed and would have no application under the facts of this case.

al without affecting Bennett's liability as a guarantor. Bennett further expressly waived any right to require the Bank to proceed against or exhaust any security held from Tupper Tree Farms, Inc. before proceeding against Bennett on the continuing guaranty agreement. *See von Dunser v. Southeast First Nat. Bank of Miami*, 367 So.2d 1094 (Fla.App.1979).

We therefore find that Bennett has no right to insist upon a determination of the validity of the Bank's interest in the collateral, let alone insist upon enforcement of the Bank's rights in that collateral, prior to obtaining a judgment on the continuing guaranty.

The judgment is affirmed.

CONTRERAS, P. J., and MOELLER, J., concur.

NOTE: The Honorable JAMES MOELLER was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 3.