MAINE NATIONAL BANK

v.

Gilbert FONTAINE.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1983.

Decided March 4, 1983.

Arthur A. Cerullo (orally), Drummond & Drummond, Portland, for plaintiff.

Thomas S. Carey (orally), Hanscom & Carey, P.A., Rumford, for defendant.

Before McKUSICK, C.J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

Following a jury trial in Superior Court, Oxford County, a judgment was entered in favor of the plaintiff, Maine National Bank, against the defendant, Gilbert Fontaine. On appeal, Fontaine contends that the justice erred by refusing to give a jury instruction on Fontaine's status as an accommodation party and on the defenses available to an accommodation party. We vacate the judgment and remand for further proceedings consistent with this opinion.

I. *Facts*

The testimony at trial would support the following factual findings. William Porter, a general contractor, hired Gilbert Fontaine as a plumbing and heating subcontractor. As a result of Fontaine's performance of

the subcontract, Porter owed Fontaine $36,-000. To enable Fontaine to pay his own creditors, Fontaine sought to collect the money that Porter owed him. Because Porter was experiencing financial difficulties, he did not have the money to pay Fontaine. Moreover, due to his financial condition, the Maine National Bank (the Bank) would not lend Porter, on his sole credit, any money to pay off his debt to Fontaine.

Porter and Fontaine went, together, to the Maine National Bank and spoke with Joyce Paulton, the loan officer. Ms. Paulton explained that the Bank would provide Porter with the loan only if Fontaine cosigned the note. Paulton further explained that as a cosignee, Fontaine would be obliged to pay the note if Porter did not pay the note when it was due.

They also discussed the possibility of Porter obtaining a Small Business Association (S.B.A.) loan. To request such a loan, a borrower must submit an application with financial statements to the Bank. After receiving the completed application, the Bank sends the application to the S.B.A. for approval. Ms. Paulton offered to help Porter prepare the application. The parties agreed that upon approval of the loan by the S.B.A., Porter would use the proceeds to pay off the loan cosigned by Fontaine.

As a result of these discussions, both Porter and Fontaine, on June 16, 1976, signed a note for $15,000. Porter signed on the line marked borrower and Fontaine signed on the line marked comaker. Fontaine testified at trial that although the Bank requested that Fontaine sign on the line marked "borrower," Fontaine did not sign that line because he did not borrow the money. He further stated that the reason he agreed to cosign the note was that the Bank had assured him that the S.B.A. loan would go through and that the S.B.A. loan proceeds would cover the loan which Fontaine cosigned. However, at the time Fontaine signed the note, he knew that the application had not been submitted to the S.B.A. or approved by the S.B.A.

Porter subsequently deposited the loan money into his checking account. Immediately thereafter, he wrote a check to Fontaine for the total amount of the note, $15,000. Fontaine questioned the Bank periodically about the progress of the S.B.A. loan application. The Bank told Fontaine that it was in the process of collecting Porter's financial statements. In September or October of 1976, the Bank discovered that Porter's financial statements were inaccurate. As a result, the Bank refused to submit the application to the S.B.A. Fontaine testified that Ms. Paulton never told him that the Bank had terminated its assistance with Porter's S.B.A. loan application. Ms. Paulton testified, however, that she told Fontaine that the Bank had refused to submit the application to the S.B.A. On September 14, 1976, December 13, 1976, and June 13, 1977, both Porter and Fontaine signed renewals of the loan. Upon each renewal, the accrued interest was paid.

On March 24, 1978, Porter filed a petition in bankruptcy. The Bank filed a proof of claim in the Bankruptcy Court for Porter's indebtedness, but the debt received no distribution. As a result of Porter's discharge, the Bank did not obtain any money from him in payment of the loan. On July 21, 1978, the Bank attempted to collect the debt from Fontaine. Fontaine refused to pay. The present suit resulted.

After the presentation of all of the evidence, the jury was instructed to determine whether the loan officer had fraudulently induced Fontaine to sign the note. The defendant requested an instruction on whether Fontaine was an accommodation party and whether prior to Fontaine signing the renewals, the Bank had a duty to disclose to an accommodation party that it had terminated assistance on the S.B.A. loan. The judge refused to give these instructions. The jury rendered a verdict for the plaintiff from which it follows that the jury found that Fontaine had not been improperly induced to cosign the note.

## II. *Discussion*

■ The defendant argues that because the issue is raised by the facts, he is entitled to a jury instruction on the issue of whether or not he signed the note as an accommodation party. "An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." 11 M.R.S.A. § 3–415(1) (1964). An accommodation party commonly appears on a note as a comaker. *See* J. White & R. Summers, *Uniform Commercial Code,* § 13–12 at 516 (2d ed. 1980). Although on the face of the instrument it appears that Fontaine signed the note as a comaker, under the circumstances of this case, it may be shown by oral evidence that the defendant signed as an accommodation party. 11 M.R.S.A. § 3–415(3); *see also Westbrook Trust Co. v. Timberlake,* 121 Me. 64, 65, 115 A. 555, 556 (1921).

■ In this case, Ms. Paulton testified that Porter would not have received the loan if Fontaine had not signed the note. Moreover, she testified that she had told Fontaine he would be obliged to pay only if Porter did not pay. Finally, Fontaine testified that he did not want to sign on the line labeled borrower because he did not borrow the money. A jury might properly have concluded from this evidence that the defendant signed the note as an accommodation party. It was within the province of the jury to determine, on all the evidence, whether or not Fontaine signed the note in such capacity. It was improper for the justice to have denied the requested instruction.

■ The defendant also argues that the justice erred in failing to give an instruction on whether or not, prior to Fontaine cosigning the renewals of the note, the Bank had a duty to disclose to an accommodation party that it refused to submit the S.B.A. loan application. An accommodation party is always a surety. 11 M.R.S.A. § 3–415, comment 1. Title 11 M.R.S.A. § 3–606 (1964) provides suretyship defenses. 11 M.R.S.A. § 3–606, comment 1. Under section 3–606(1)(a), a renewal of a note, an extension of time in the right of enforcement, discharges a surety *who has not consented* to such a renewal.[1] *See also Westbrook Trust Co.,* 121 Me. at 66, 115 A. at 556 (emphasis added). Consent implies meaningful or informed consent. Consequently, if at the time the surety consents to the extension of time, a creditor knows of facts which the creditor has reason to believe are unknown to the surety, which materially increase the risk beyond the point that the creditor had reason to believe the surety intended to assume, and which the creditor had a reasonable opportunity to communicate to the surety, failure on the part of the creditor to notify the surety of such facts is a defense to the surety. *See Sumitomo Bank of California v. Iwasaki,* 70 Cal.2d 81, 88, 73 Cal.Rptr. 564, 571, 447 P.2d 956, 963 (1968); *accord First National Bank of Arizona v. Bennett Venture, Ltd.,* 130 Ariz. 562, 564, 637 P.2d 1065, 1067 (App. 1981); *Watkins Products, Inc. v. Stadel,* 214 N.W.2d 368, 374–75 (N.D.1973); *First National Bank & Trust of Racine v. Notte,* 97 Wis.2d 207, 213, 293 N.W.2d 530, 536 (1980).

1. 11 M.R.S.A. § 3–606(1)(a) provides:

   (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder,
   (a) Without express reservation of rights, releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary. . . .

   The rationale behind the rule requiring the consent of the surety is that any extension of time on the right of enforcement increases the surety's risk. The surety's risk has increased because a greater probability of default exists over a longer period of time and because the surety has been deprived for a period of time of his subrogation to the creditor's cause of action against the debtor. J. White & R. Summers, *supra,* § 13–14 at 523.

There was disputed testimony on the issue of whether Ms. Paulton informed Fontaine of the Bank's refusal to submit Porter's S.B.A. loan application. Ms. Paulton testified that she informed Fontaine that the Bank had refused to submit the application to the S.B.A. prior to Fontaine's renewal of the loan. Fontaine testified, however, that he heard about the termination a year later, after he had renewed the loans in September and December of 1976 and in June of 1977. The defendant contends that if he had been supplied this information, he would not have renewed the loans.

It was within the province of the jury to determine, under appropriate legal instructions, whether or not on the evidence the Bank had a duty to inform Fontaine that the Bank had refused to submit Porter's S.B.A. loan application. Additionally, if this issue were properly submitted, the jury might be required to decide as a factual matter whether Ms. Paulton, as the Bank's agent, performed that duty by advising Fontaine that the S.B.A. application had not been submitted. If the jury found in favor of Fontaine on these issues, Fontaine could have been discharged of any obligation under the note. To refuse to permit the jury to consider these issues, therefore, severely prejudiced the defendant.

The entry is

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with this opinion.

All concurring.