ROY NOBLE LEE, Presiding Justice,
for the Court:
The Chancery Court of Jackson County, Mississippi, Honorable Glenn Barlow, presiding, entered judgment on the 27th day of October, 1982, in the amount of sixty-eight thousand eight hundred eighty-six dollars eighty-eight cents ($68,886.88) due on a promissory note and thirteen thousand seven hundred seventy-seven dollars and thirty-eight cents ($13,777.38), attorney’s fees, against Preston Price, Sr., James H. McIntosh and Mary Jane McIntosh, and in favor of First National Bank of the South. Preston Price, Sr., has appealed to this Court and assigns the following errors in the trial below:
I.
THE LOWER COURT ERRED IN HOLDING THAT THE APPELLANT, PRICE, WAS NOT AN ACCOMMODATION MAKER.
II.
THE LOWER COURT ERRED IN NOT FINDING THAT THE APPELLEE HAD IMPAIRED THE COLLATERAL.
III.
THE LOWER COURT ERRED IN FINDING THAT THE APPELLEE HAD DISPOSED OF THE COLLATERAL IN A REASONABLE COMMERCIAL MANNER.
On December 9, 1980, James H. McIntosh, Mary Jane McIntosh, his wife, and appellant executed a promissory note secured by deed of trust and security agreement in favor of appellee for eighty-four thousand eight hundred seventy-five dollars and thirty cents ($84,875.30) payable at the rate of seventeen percent (17%) interest per annum in thirty-six (36) payments, the first thirty-five (35) payments being in the amount of fourteen hundred fifty-four dollars ($1,454.00) and the last and final payment for the remaining balance. The collateral on said note was Lot 247, Westgate Estate Subdivision (home of McIntosh), with a First deed of trust thereon, 1979 Freightliner truck, 1979 Pontiac Bonneville automobile, a Terry bass boat, and a Johnson outboard motor.
Previous to execution of the note, appellant owned and operated the Tiki Restaurant on the Mississippi Gulf Coast. McIntosh was a personal friend of appellant and was an employee of the Tiki Restaurant Corporation, working as nightclub manager. Appellant retired from the restaurant business, and it is undisputed that he executed the note along with the Mclntoshes in order that McIntosh could raise finances and enter the trucking business. Appellant had no interest in the collateral and he did not expect to receive any benefit from the execution of the note or from the trucking business.
As stated, the note was executed December 9, 1980, and the payments were in the amount of $1,454.00 each for thirty-five (35) months, beginning January 10, 1981. After April 15, 1981, the loan was never current and only two (2) payments were made, one on August 13, 1981, in the sum of eight hundred dollars ($800.00), and the second on September 15, 1981, in the sum of nine hundred dollars ($900.00). Eventually, the home and lot were sold under a court order, the first deed of trust was paid off and, after payment of expenses, the balance was paid to appellee. The Bonneville automobile was sold and forty-five hundred dollars ($4,500) of the amount received was applied to the note. The other personal property was sold and the proceeds applied to the indebtedness. Suit was filed for the delinquency on October 6, 1981, prior to surrender of the collateral, viz, Freightliner, boat, and outboard motor, *1342 to appellee. However, appellee bank continued to work with the Mclntoshes who were attempting to get the loan current.
I.-III.
Appellant contends that (1) he was an accommodation maker, (2) the appellee impaired the collateral which secured the note and (3) appellee did not dispose of the collateral in a reasonable commercial manner and appellant should be discharged under his status as an accommodation maker.
The promissory note dated December 9, 1980, introduced as Exhibit 4, provided the following:
All parties hereto, whether maker or endorser, hereby authorize and empower said Bank at any time to appropriate and apply to the payment and extinguishment hereof and of any of the obligations or liabilities, direct or contingent, of any of the parties hereto, whether now existing or hereafter arising and whether then due or not due, any and all monies, stocks, bonds, or other property of any kind whatever now or hereafter in the hands of said Bank on deposit or otherwise to the credit of or belonging to any party hereto, including any monies or other property in transit to or from said Bank for any purpose, such application, however, to be made only to the obligations or liabilities, direct or contingent, of the party or parties to whom such monies or other property belong, or from whom the same may be so on deposit or credited or to be credited. Any such application shall be at the option of the Bank, and failure to make any such application to the payment of such liabilities shall not affect the liability of any party hereto. Full power and authority hereby given the said Bank to sell, assign and transfer all such stocks, bonds or property at public or private sale, at its option, without either demand, advertisement or notice of any kind, all of which are hereby expressly waived.
The remedy under Miss.Code Ann. § 75— 3-606(1) provides:
The holder discharges any party to the instrument to the extent that without such party’s consent the holder
S)C ⅜! Sft jfc
(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
The lower court found that it was clear from the face of the note and security instrument that appellee and the Mclntosh-es all signed as makers; that there was no reference to appellee having executed it in any other way; and that the decision was being based on the proposition that they were all makers and appellee was not an accommodation maker. However, it is not necessary for us to address that question and decide same, since the answer to Assignments II and III are dispositive of the case.
We now address the questions of impairment of collateral and whether the collateral was disposed of in a reasonable commercial manner. On April 15,1981, the bank released the 1979 Pontiac Bonneville from the security agreement without notice lO appellant. The $4,500 trade-in was applied to the loan. The amount of $4,500 applied to the loan was in excess of the NADA loan value on the vehicle. Under the terms of the note, appellee had authority to release the collateral and apply it to the indebtedness, therefore, the appellant consented to the release and sale of the automobile prior to that action.
In Haney v. Deposit Guaranty National Bank, Centreville Branch, 362 So.2d 1250 (Miss.1978), the note stated: "... [t]he Bank may at its discretion surrender any collateral without affecting the liability of any obligor.” This Court held:
While relying on § 75-3-606(l)(b) appellant overlooks (1) the unjustifiable impairment of collateral must be without the consent of the party claiming discharge thereon, and (2) the very instrument on which she became a party has her consent that appellee might surren *1343 der any collateral without affecting her liability.
362 So.2d at 1252.
As to the 1979 Freightliner truck, the bank only received two (2) payments from McIntosh totalling seventeen hundred dollars ($1,700) between April 15, 1981, and September 15, 1981, even though a payment of $1,454.00 was due each month. Thereafter, no payments were made. Ap-pellee notified appellant’s attorney on August 14, 1981, that the loan was in arrears and that the bank was working with McIntosh to get the loan current. Appellant was so notified by his attorney on that date, and appellant was notified on September 17, 1981, that the note was in arrears. Also, he was notified that the collateral was being called in by the bank. After suit was filed, on October 6, 1981, McIntosh remained in possession of the truck until April 7, 1982.
Appellant contends that this delay in foreclosing on the truck caused the value of the collateral to be diminished and this was a sufficient impairment of the collateral to discharge him as a party under Mississippi Code Annotated § 75-3-606(l)(b). He cites eases to the effect that an extension of time in the right of enforcement discharges a surety who has not consented to such a renewal. Maine National Bank v. Fontaine, 456 A.2d 1273 (Me.1983); and Langeveldv. L.R.Z.H. Corp., 74 N.J. 45, 376 A.2d 931 (1977).
Appellee responds, and the record so indicates, that when the loan became delinquent appellee made every effort to obtain payment and the money without harming appellant. There was a discussion about appellant taking over the collateral and employing McIntosh. The record indicates by exhibits that the appellant was in constant touch with the situation. Again, the note executed by appellant stated the following:
All parties hereto, whether maker or endorser, hereby severally waive presentment for payment demand notice of nonpayment, protest, notice of protest, and all other requirements necessary to hold each of them and agree that the payment hereof may be extended from time to time, one or more times, and that this note may be renewed from time to time all without notice and hereby bind themselves unconditionally and as original promisors and makers for the payment hereof, in principal, interest, costs and attorney’s fees. In the event of default at maturity all sums due hereunder shall bear interest at the legal rate from maturity until same is paid in full.
Notice was sent to appellant and McIntosh regarding sale of the collateral, viz, Freightliner truck, boat, motor and trailer. Ten (10) bids were received for the boat, motor and trailer. Appellant’s attorney attended and was present at the sale of such collateral. The appellee bank bought the boat, trailer and motor at the sale for twenty-five hundred dollars ($2,500), and bought the Freightliner truck for twenty thousand dollars ($20,000). Later, on the day of the sale, an individual offered three thousand dollars ($3,000) for the boat and motor and appellee accepted the offer and credited it to the note. Appellee was unable to sell the Freightliner truck for $20,000, and subsequently sold it for sixteen thousand five hundred dollars ($16,500), but credited the loan with $20,000, which the appellee had bid at the sale.
McIntosh was nine (9) payments delinquent upon the first mortgage covering the McIntosh home and lot, and the mortgagee was preparing to foreclose. The Chancery Court of Jackson County on April 30, 1982, authorized the appellee to accept eleven thousand five hundred dollars ($11,500) less expenses, which netted nine thousand nine hundred fifty-five dollars ($9,955) to it as second mortgagee, which amount was credited to the McIntosh loan.
The chancellor held that the appel-lee received and applied as credit to the note the sum of $9,955.00 from the sale of the home and lot, $4,500 from the sale of the Pontiac Bonneville, $3,000 from the sale of the boat and motor, and $20,000 for the sale of the Freightliner truck, representing the fair market value or in excess of the fair market value of the collateral so *1344 disposed of; that there was no impairment of the collateral; and that the collateral was sold, and the appellee acted, in a reasonable commercial manner. We cannot say that the chancellor was manifestly wrong in his finding of fact and in the judgment entered, and we are of the opinion that the evidence supports his finding. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
ON MOTION TO CORRECT JUDGMENT
The appellee, First National Bank of the South, has filed a motion to correct the judgment of this Court entered on September 4, 1985, so that, in addition to the judgment being rendered against Preston Price, Sr., the appellant, it also be entered against Fidelity and Deposit Company of Maryland, the surety on the appellant’s supersedeas appeal bond.
The statute applicable to this question is Mississippi Code Annotated § 11-3-27 (1972), which provides:
In case a bond has been given for a supersedeas, the judgment of the supreme court, on affirming the judgment or decree of the court below, or on a dismissal of the appeal by the appellant or the court, shall be for the money adjudged or decreed against appellant, and damages and costs, or for the specific property and damages and costs, or for the damages and costs, as the case may be, against all the obligors of the bond who may be living at that time, and execution may be issued thereon accordingly. If any of the obligors be dead, his representatives may be summoned to show cause why judgment should not be rendered against them on the bond; and if good cause be not shown to the contrary, judgment shall be entered against them in like manner as against the living obligors, and certified to the court below, and execution may be issued thereon.
In Koehring Co. v. Hyde Construction Co., 254 Miss. 214, 182 So.2d 580 (1966), this Court considered the same question and stated:
It is next contended by the appellee' that the judgment of the Court should be amended to include the surety on appellant’s supersedeas bond, the Fidelity and Deposit Company of Maryland. We agree that the judgment should be amended so as to include the judgment against the Fidelity and Deposit Company of Maryland, surety on appellant’s supersedeas bond, so as to make appellant and the surety jointly liable for the judgment in favor of Hyde Construction Company against Koehring Company, Mississippi Code Ann. § 1973 (1956).
182 So.2d at 581.
Therefore, the judgment of this Court will be amended and provide that the judgment also be rendered against Fidelity and Deposit Company of Maryland, surety on appellant’s supersedeas bond, in this cause.
JUDGMENT AMENDED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.